[This opinion has been published in *Ohio Official Reports* at 79 Ohio St.3d 34.]

FELTON, APPELLANT, *v*. FELTON, APPELLEE.

[Cite as *Felton v. Felton*, 1997-Ohio-302.]

*Domestic relations—Court not precluded by statute or public policy reasons from issuing a protection order pursuant to Ohio's civil domestic violence statute where the parties' dissolution or divorce decree already prohibits the parties from harassing each other—When granting protection order, trial court must find that petitioner has shown by a preponderance of the evidence that petitioner or petitioner's family are in danger of domestic violence—A pleading is not admissible into evidence at a hearing to prove a party's allegations and must not be considered as evidence by the court.*

1.  A court is not precluded by statute or public policy reasons from issuing a protection order pursuant to Ohio's civil domestic violence statute, R.C. 3113.31, where the parties' dissolution or divorce decree already prohibits the parties from harassing each other.

2.  When granting a protection order, the trial court must find that petitioner has shown by a preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence. R.C. 3113.31(D).

3.  A pleading is not admissible into evidence at a hearing to prove a party's allegations and must not be considered as evidence by the court. (*State ex rel. Copeland v. State Med. Bd.* [1923], 107 Ohio St. 20, 1 Ohio Law Abs. 165, 140 N.E. 660, paragraph two of the syllabus; *Hocking Valley Ry. Co. v. Helber* [1915], 91 Ohio St. 231, 110 N.E. 481, paragraph three of the syllabus, applied and followed.)

(No. 96-198—Submitted March 19, 1997—Decided June 18, 1997.)

APPEAL from the Court of Appeals for Carroll County, No. 94CA646.

{¶ 1} On April 16, 1993, appellant Candie Felton and appellee Roger Felton, by decree of dissolution, ended their five-year marriage. On September 8, 1994, appellant filed a petition for a protection order pursuant to Ohio's civil domestic violence statute, R.C. 3113.31. Appellant requested that the court grant a protection order restraining appellee from assaulting, harassing, threatening, or otherwise intimidating her or her children.

{¶ 2} On September 9, 1994, the trial court issued a temporary protection order which enjoined appellee from approaching appellant, granted appellant exclusive temporary custody of the children, and set the matter for hearing on September 15, 1994. At the September 15, 1994 hearing, appellee requested a continuance until a verdict had been reached in the pending criminal charge of domestic violence against him. The trial court continued the prior visitation schedule and the temporary protection order and set the matter for a full hearing.

{¶ 3} On December 20, 1994, the court held a full hearing on the petition for a protection order, during which appellant testified that appellee's assaults upon her had increased during their marriage and continued after the dissolution. She told of a violent episode, occurring on July 26, 1994, in which appellee allegedly "hauled off and hit me in the back of my back, threw me down on the floor and started kicking and hitting me again, and then when I finally got up off the floor he took his hand and tried to strangle me up against the refrigerator and then our son intervened and that's when he stopped." She stated that appellee would repeatedly call at night and keep her on the phone. If appellant terminated the phone call, appellee would immediately rush over to appellant's house and threaten her. She testified that she was afraid that if she did anything to anger appellee, he would actually try to kill her. Appellant testified that appellee stopped calling her at night after August 2, 1994 when she filed the criminal charges of domestic violence against him and the county court issued a temporary protection order.

**{¶ 4}** At the December 20, 1994 hearing, appellant also presented as witnesses Paul Long, Mayor of Dellroy and an employee of Lumber Service, and Stephanie Dover-Furgiuele, a family counselor with the firm of Personal and Family Counseling Services of Dover. Long testified that approximately one to one and a half years prior to the hearing, at around the time of the Feltons' dissolution, appellant told him that appellee had hit her two or three times and that Long had seen a bruised mark on appellant's shoulder. Dover-Furgiuele testified that she had met with appellant, appellee, their children, and appellee's mother at various times since August 1994. Dover-Furgiuele testified as to the relationship between appellant and the children.

**{¶ 5}** After appellant closed her presentation of evidence, appellee moved for a directed verdict. The court considered counsel's arguments regarding the standard of proof and subsequently determined that the correct standard was preponderance of the evidence. The court decided that appellant had presented a prima facie case that she had "been the victim of some domestic violence" and overruled the motion for a directed verdict. Appellee then rested his case without presenting any evidence. The court found that appellant had not met her burden of proving the domestic violence by a preponderance of the evidence and accordingly dismissed the action "for lack of evidence."

**{¶ 6}** Upon appeal, the court of appeals held that because the parties' decree of dissolution included a provision which prohibited each party from harassing or interfering with the other party, a protection order issued pursuant to R.C. 3113.31 was unnecessary. Accordingly, the court of appeals affirmed the decision of the trial court.

**{¶ 7}** The cause is now before this court pursuant to the allowance of a discretionary appeal.

———————————

*Southeastern Ohio Legal Services* and *Gregory Allen Tasker*, for appellant.

*Tate & Renner* and *Richard R. Renner*, urging reversal for *amici curiae*, Ohio National Organization for Women, Ohio NOW Education and Legal Fund, Action Ohio, Ohio Domestic Violence Network, and National Center on Women and Family Law.

_____

**ALICE ROBIE RESNICK, J.**

{¶ 8} This case presents two issues. The first is whether a court may issue a domestic protection order pursuant to R.C. 3113.31 when, as part of the dissolution decree, the parties have agreed to a provision prohibiting harassment of each other. The second issue is what is the correct burden of proof that a court must use when issuing a protection order pursuant to R.C. 3113.31.

I

{¶ 9} The court of appeals held that because the parties' dissolution decree contained a no-harassment provision, a domestic violence protection order would be unnecessary and superfluous. We disagree.

{¶ 10} Initially we note that R.C. 3113.31(G) states, "The remedies and procedures provided in this section are *in addition to, and not in lieu of*, any other available civil or criminal remedies." (Emphasis added.) Thus, nothing in the statutes precludes the court from issuing a protection order even though the no-harassment provision of the dissolution decree continues to govern the parties' actions towards each other.

{¶ 11} The court of appeals further held that the "provision in the final judgment entry [of the dissolution decree] is of much more force and effect than one which [the court] might issue in the domestic violence action for only a period of one year." This is patently incorrect.

{¶ 12} The General Assembly enacted the domestic violence statutes specifically to criminalize those activities commonly known as domestic violence and to authorize a court to issue protection orders designed to ensure the safety and

4

protection of a complainant in a domestic violence case. Ohio Legislative Service Commission, Summary of 1978 Enactments, June-December (1979), at 9-14; Legislative Service Commission Analysis of Sub. H.B. No. 835 as reported by Senate Judiciary Committee (1978), at 2 and 7 (Comment A); Legislative Service Commission Analysis of Am. Sub. H.B. No. 835 as enacted (1978), at 1 and 2.[1] Accordingly, R.C. 3113.31 authorizes a court in an *ex parte* hearing to issue a temporary protection order when the court finds there to be an "[i]mmediate and present danger of domestic violence to the family or household member." R.C. 3113.31(D). Subsequent to this, the court proceeds as in a normal civil action and grants a full hearing. R.C. 3113.31(D). After such hearing, the court may issue a protection order that may direct the respondent to refrain from abusing the family or household members, grant possession of the household to the petitioner to the exclusion of the respondent, temporarily allocate parental rights and responsibilities and visitation rights, require the respondent to maintain support, require all parties to seek counseling, require the respondent to refrain from entering the residence, school, business, or place of employment of the petitioner, and grant any other relief that the court considers equitable and fair. R.C. 3113.31(E)(1).

{¶ 13} The no-harassment provision, by contrast, contains only a general prohibition. As read by the trial court judge, the dissolution agreement states: "'Each party shall hereafter continue to live separate and apart from the other and each shall go his or her own way without direction, control, or molestation from the other the same as though unmarried[.]' * * * 'Further, each shall not annoy, harass, or interfere with the other in any manner whatsoever.' "

---

1. A pending bill proposing amendments to the various statutory provisions that are concerned with domestic violence, 1997 Sub.S.B. No. 1, would continue to emphasize the prevention of domestic violence. In its analysis of S.B. No. 1, the Legislative Service Commission notes that a "court may grant *any* civil protection order or approve any consent agreement * * * to bring about a cessation of domestic violence against the family or household members." Bill Analysis, Sub.S.B. No. 1 (as passed by the Senate, 1997),

{¶ 14} The statute gives the trial court extensive authority to tailor the domestic violence protection order to the exact situation before it at the time, while the no-harassment provision in the dissolution decree is general in nature and application and does not take into account any changes in custody, housing, transportation, and any other household needs that may have arisen since the dissolution.

{¶ 15} Additionally, with a protection order come several features not available with a dissolution or divorce decree. First, the results of violating the R.C. 3113.31 protection order are much more immediate and consequential than the results of violating a provision of a divorce or dissolution decree. A person who violates a protection order is subject to criminal prosecution for a violation of R.C. 2919.27, and punishment for contempt of court. R.C. 3113.31(L)(1). Punishment for contempt of court does not preclude subsequent criminal prosecution under R.C. 2919.27. R.C. 3113.31(L)(2). Anyone who recklessly violates any terms of a protection order issued pursuant to R.C. 2919.26 or 3113.31 is guilty of violating a protection order, which is a misdemeanor of the first degree. R.C. 2919.27(B)(1)(a).[2] The penalty for a misdemeanor of the first degree is imprisonment for not more than six months and/or a fine of not more than one thousand dollars. R.C. 2929.21. If the violator has previously been convicted or pleaded guilty to two or more violations of R.C. 2919.27, 2903.211 (menacing by stalking), or 2911.211 (aggravated trespass), the violation is a felony of the fifth degree. R.C. 2919.27(B)(1)(b). The penalty for a felony of the fifth degree is imprisonment for six to twelve months or a community control sanction (which may be made up of a combination of residential [*e.g.*, jail and halfway house] and

---

2. The General Assembly has amended R.C. 2919.27 since appellant filed her petition pursuant to R.C. 3113.31. However, the current version of the statute would apply to any *violation* that occurred now.

nonresidential [day reporting, house arrest, community service, *inter alia*] sanctions) and/or a fine of not more than $2,500.  R.C. 2929.13 through 2929.18.

{¶ 16} In contrast, a violation of a dissolution or divorce decree is subject to contempt of court for violating a court's final judgment entry.  R.C. 2705.02(A). Anyone who is found guilty of contempt of court may be subject to a fine of not more than $250 and/or imprisonment of not more than thirty days in jail (first offense), a fine of not more than $500 and/or imprisonment of not more than sixty days in jail (second offense), or a fine of not more than $1,000 and/or imprisonment of not more than ninety days in jail (third or greater offense).  R.C. 2705.05(A).  It is quite apparent that the penalties for violating a protection order are considerably more substantial and punitive and thus more deterring than those for violating a court's judgment entry.

{¶ 17} Second, the statutes provide for the preferred arrest of a violator of a protection order.  No such policy applies to violators of a court order or judgment entry.  The preferred-arrest policy states that if a peace officer has reasonable grounds to believe that a violation of a protection order has been committed and reasonable cause to believe that a particular person is guilty of committing the offense, "it is the preferred course of action in this state that the officer arrest and detain that person * * * until a warrant can be obtained."  R.C. 2935.03(B)(3)(b). If the officer does not make an arrest when it is the preferred course of action in this state, "the officer shall articulate in the written report of the incident * * * a clear statement of the officer's reasons for not arresting and detaining that person until a warrant can be obtained."  R.C. 2935.03(B)(3)(c).  A finding of contempt of court does not carry with it any of the foregoing rights and powers.  Nor are those proceedings generally on a fast track.

{¶ 18} Third, R.C. 3113.31(F)(1) requires that a copy of the protection order be issued to all law enforcement agencies that have jurisdiction to enforce the order or agreement, R.C. 3113.31(F)(1), and that all law enforcement agencies

establish and maintain an index of the protection orders sent to them. R.C. 3113.31(F)(2). In addition, any law enforcement officer shall enforce a protection order issued by any court in this state regardless of whether the petitioner has registered the order in the county of the law enforcement officer's jurisdiction. R.C. 3113.31(F)(3). With this statewide enforcement, communication, indexing, and authority, enforcement of the protection order is much more apt to occur than a contempt order.

{¶ 19} And, fourth, a protection order is easier for a petitioner to enforce than a "no-harassment" provision in a dissolution or divorce decree. As described above, R.C. 3113.31(B) provides for enforcement of a protection order by the police. Upon threat of a violation of a civil protection order, a petitioner need only call the police, who are available at all times of the day or night. By contrast, in order to enforce a provision in a dissolution or divorce decree, the petitioner must move the court to find the violator in contempt. The court is available only during normal business hours and often a motion for contempt is so complicated as to require the services of an attorney. Moreover, because of the congested dockets of most domestic relations courts, the process can take an extremely lengthy time to get a hearing scheduled. The police, by enforcing a protection order, are thus in a much better position than is the court, through a contempt action, to prevent further domestic violence.

{¶ 20} Finally, the court of appeals appears to have been swayed by the temporary nature of a protection order. Pursuant to R.C. 3113.31(E)(3)(a), any protection order issued pursuant to that statute is valid for a maximum period of two years. The court of appeals stated that, because the dissolution decree has no termination date, it is more powerful. However, a protection order issued pursuant to R.C. 3113.31 is fully renewable in the same manner as the original order was issued. R.C. 3113.31(E)(3)(c). Thus, the overwhelming benefits to the victim of domestic violence that the protection order offers far outweigh any concerns about

the temporary nature of the protection order, which can be renewed at the end of the effective period.

{¶ 21} Last, we note that there are strong policy reasons for allowing a court to issue a protection order *after* a divorce or dissolution has become final. Violence against a former spouse does not stop with the separation:

"Women who are divorced or separated are at higher risk of assault than married women.[3] The risk of assault is greatest when a woman leaves or threatens to leave an abusive relationship.[4] Nonfatal violence often escalates once a battered woman attempts to end the relationship.[5] Furthermore, studies in Philadelphia and Chicago revealed that twenty-five percent of women murdered by their male partners were separated or divorced from their assailants.[6] Another twenty-nine percent of women were murdered during the separation or divorce process.[7] State statutes need to protect women and children during and after the break-up of

---

3. ¨Stark & Flitcraft [Violence Among Intimates: An Epidemiological View, in Handbook of Family Violence (Van Hassett et al. Ed.1987) 293, 301], at 307-08."

4. "*See* Ganley [Domestic Violence: The What, Why and Who, as Relevant to Civil Court Cases, in Domestic Violence in Civil Court Cases: A National Model for Judicial Education (Jacqueline A. Agtuca et al. Ed.1992)], at 24. Separated or divorced women are six times more likely to be victims of violent crime than widows and four and one half times more likely than married women. Harlow [U.S. Dept. of Justice, Female Victims of Violent Crime (1991)], at 5; *see also* Elis Desmond, *Post-Separation Woman Abuse: The Contribution of Lawyers as 'Barracudas,' 'Advocates,' and 'Counselors,'* 10 Int'l J.L. & Psych. 403, 408 (1987)."

5. "David Adams, *Identifying the Assaultive Husband in Court: You Be the Judge*, 13 Response to the Victimization of Women & Children 13 (1990). Perpetrators of domestic violence view the abused party's attempts to leave the relationship as the ultimate act of resistance and consequently increase their violence in response to attempts by the victim to leave."

6. ¨Ganley, *supra* note [4], at 24."

7. "Noel A. Casanave & Margaret A. Zahn, Women, Murder, and Male Domination: Police Reports of Domestic Homicide in Chicago and Philadelphia, Paper Presented at the American Society of Criminology Annual Meeting (Oct. 1986). This paper additionally found that husbands were commonly motivated to kill their wives because they felt abandoned or feared they were losing control over them. In one study of spousal homicide, over one-half of the male defendants were separated from their victims. Franklin E. Zimring et al., *Intimate Violence: A Study of Intersexual Homicide*, 50 U. Chi. L. Rev. 910, 916 (1983)."

relationships because of their continuing, and often heightened, vulnerability to violence." (Footnotes renumbered.) Klein and Orloff, Providing Legal Protection for Battered Women: An Analysis of State Statutes and Case Law (1993), 21 Hofstra L.Rev. 801, 816.

{¶ 22} In Ohio, the domestic violence statutes grant police and courts great authority to enforce protection orders, and violations of those protection orders incur harsh penalties. Therefore, protection orders issued pursuant to R.C. 3113.31 are the more appropriate and efficacious method to prevent future domestic violence and thus accomplish the goals of the legislation. Accordingly, a court is not precluded by statute or public policy reasons from issuing a protection order pursuant to Ohio's civil domestic violence statute, R.C. 3113.31, where the parties' dissolution or divorce decree already prohibits the parties from harassing each other.

II

{¶ 23} We will now address the issue of the burden of proof to be used when issuing a protection order. The trial court requested arguments from the parties as to which standard of proof to apply and then decided upon the preponderance of the evidence.

{¶ 24} R.C. 3113.31 is silent as to the appropriate burden of proof required to issue a protection order. The Ohio courts of appeals are divided over whether to apply the clear-and-convincing standard or the lesser standard of preponderance of the evidence. The courts applying the clear-and-convincing standard reason that a protective order issued pursuant to R.C. 3113.31 is analogous to an injunction and, as an action for equitable relief, as opposed to monetary damages, the issuance of a protection order is subject to the clear-and-convincing standard. *O'Hara v. Dials* (Feb. 2, 1996), Erie App. No. E-95-044, unreported, at 4-7, 1996 WL 38810. See, also, *Moman v. Smith* (Oct. 14, 1996), Clermont App. No. CA96-05-047, unreported, 1996 WL 586771; *Tischler v. Vahcic* (Nov. 16, 1995), Cuyahoga App.

10

No. 68053, unreported, 1995 WL 680928; *Coughlin v. Lancione* (Feb. 25, 1992), Franklin App. No. 91AP-950, unreported, 1992 WL 40557 (requiring clear and unequivocal evidence).

{¶ 25} Courts applying a lesser standard of proof appear to base that standard upon the statutory language. *Thomas v. Thomas* (1988), 44 Ohio App.3d 6, 8, 540 N.E.2d 745, 746 ("The statutory criterion * * * is the existence or threatened existence of domestic violence."). See, also, *Deacon v. Landers* (1990), 68 Ohio App.3d 26, 587 N.E.2d 395; *Snyder v. Snyder* (Aug. 15, 1995), Ross App. No. 94 CA 2068, unreported, at 10, 1995 WL 493998 (The court reviewed trial court record for "sufficient competent, credible evidence to support a finding that appellant committed domestic violence against appellee.").

{¶ 26} R.C. 3113.31 directs only that the court "proceed as in a normal civil action." R.C. 3113.31(D). In *Walden v. State* (1989), 47 Ohio St.3d 47, 53, 547 N.E.2d 962, 967, this court observed:

"The General Assembly, had it wanted to do so, knew how to specify a 'clear and convincing' standard. A review of the Revised Code reveals at least nineteen sections in which the General Assembly has specified a 'clear and convincing' standard by using the words 'clear and convincing.' See, *e.g.*, R.C. 709.07(D) (petition to enjoin annexation); 1533.92 (appeal from denial of fishing tournament permit); 1701.59 (breach of fiduciary duty by corporate directors); 2307.80 (punitive damages in products liability actions); 3111.03 (rebuttal of presumption of paternity); 4731.22 (summary suspension of license to practice medicine); 5122.15 (civil commitment of mentally ill person). Accordingly, it is clear that the General Assembly intended to apply the usual preponderance of the evidence standard to civil proceedings under R.C. 2305.02."

{¶ 27} The same reasoning applies to R.C. 3113.31. Had the General Assembly intended that the clear-and-convincing standard apply, it certainly knew how to specify that standard. Thus, we hold that when granting a protection order,

the trial court must find that petitioner has shown by a preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence. R.C. 3113.31(D).

**{¶ 28}** In the case *sub judice*, the trial court determined that after presenting her evidence, appellant had shown a prima facie case supporting a protection order. Subsequently, however, the court held in its final judgment that appellee's answer to appellant's petition for a protection order was evidence enough to controvert appellant's evidence, and the court dismissed the petition.[8]

**{¶ 29}** A pleading is not admissible into evidence at a hearing to prove a party's allegations and must not be considered as evidence by the court. *State ex rel. Copeland v. State Med. Bd.* (1923), 107 Ohio St. 20, 1 Ohio Law Abs. 165, 140 N.E. 660, paragraph two of the syllabus; *Hocking Valley Ry. Co. v. Helber* (1915), 91 Ohio St. 231, 110 N.E. 481, paragraph three of the syllabus. See, also, *Farmers Prod. Credit Assn. of Ashland v. Stoll* (1987), 37 Ohio App.3d 76, 523 N.E.2d 899. The trial court erred in considering appellee's answer as evidence in its decision of whether to grant the petition for a protection order. The only admissible evidence presented by the parties at the hearing that the court could consider in its decision was the testimony of appellant, Paul Long, and Stephanie Dover-Furgiuele. After full arguments from the parties' attorneys about what standard of proof to use and after deciding that the proper standard is "preponderance of the evidence," the trial court clearly found appellant's testimony credible. When appellee's attorney

---

8. The court's final judgment entry states in full:

"This matter came on for a merits hearing this date upon the petitioner's complaint in civil domestic violence, filed September 8, 1994, pursuant to R.C. 3113.31. Present were both parties and their respective counsel. In his September 20, 1994 answer, the respondent had entered a general denial to the petitioner's substantive allegations.

"At the conclusion of the evidence and upon consideration, the court finds that petitioner has failed to prove her case by a preponderance of the evidence (see record).

"Accordingly, it is hereby ordered that this action is dismissed for lack of evidence, without prejudice.

"Court costs are taxed to the parties equally."

moved for a directed verdict after appellant rested her case and before appellee presented any evidence, the court stated:

"Well, we'll assume for the sake of argument [the standard of proof] is [preponderance of evidence] and at this point in time there is at least prima facie evidence that the petitioner since the dissolution action was final has sustained some domestic violence, or has been the victim of some domestic violence sufficient to overcome a directed verdict at this time."

{¶ 30} Thus, the court found appellant's evidence to be credible and to be sufficient to meet the requirements of R.C. 3113.31 for purposes of withstanding the so-called motion for a directed verdict. (Since there was no jury, the motion should have been for a dismissal under Civ.R. 41[B][2].) Given the opportunity by the court, appellee declined to present any evidence, appellant's evidence was uncontroverted and thus met the preponderance-of-the-evidence standard of proof.

{¶ 31} Specifically, our review of the record shows sufficient, credible evidence to support a finding that appellant was in danger of domestic violence. R.C. 3113.31(D). Domestic violence is defined in part as:

"* * * the occurrence of one or more of the following acts against a family or household member:

"(a) Attempting to cause or recklessly causing bodily injury;

"(b) Placing another person by the threat of force in fear of imminent serious physical harm * * *." R.C. 3113.31(A)(1).

{¶ 32} Appellant testified that appellee's assaults upon her increased during her marriage, and continued after the divorce, culminating in a violent episode occurring on July 26, 1994 in which appellee attempted to strangle her. Moreover, she stated that appellee would harass her on the phone. She also testified that she was afraid that if she did anything to anger appellee, he would actually try to kill her. Paul Long testified that approximately one to one and a half years prior to the hearing, at around the time of the Feltons' dissolution, appellant told him that

appellee had hit her two or three times and that Long had seen a bruised mark on appellant's shoulder. Without controverting evidence, this testimony presents sufficient, credible evidence to prove by a preponderance of the evidence that appellee had engaged in acts of domestic violence. R.C. 3113.31(A)(1). The trial judge in effect held that this evidence did not meet the preponderance-of-the-evidence standard. Rather, the trial judge would require corroborating eyewitness testimony or medical evidence to establish domestic violence by a preponderance of the evidence. It appears from the comments of the trial judge that a victim's testimony, standing alone, would never be sufficient to establish proof by a preponderance of the evidence. Domestic violence is seldom committed in the presence of eyewitnesses. Moreover, in many cases medical evidence is absent. Often the only evidence of domestic violence is the testimony of the victim. Generally, the victim will not photograph bruises or share these episodes of abuse with others. In the case *sub judice,* after thoroughly considering the record, we find that the evidence presented by the appellant was sufficient to meet the preponderance-of-the-evidence standard. The trial court thus erred by not granting appellant's petition for a protection order.[9]

---

9. In order to grant appellant's petition for a protection order, the trial court erroneously required appellant to present some evidence which would corroborate her testimony. Upon reaching the final decision to dismiss the petition, the court stated:

"[Respondent and his attorney] have the burden of proving nothing. [Petitioner] carries the burden of proving that these incidents took place by a preponderance of the evidence. We have no police reports. We have no physician or hospital reports. We have no eyewitnesses. We have no admission by the, other than her [*sic*]. We have no admission from the defendant and I thought surely you would have called the son to testify because he is the one that uh, according to your client's testimony, was the one who pulled the father off and stopped the strangulation, at least for the purpose of corroborating that the incident took place.

"* * *

"Well, how as a matter of law does this rise to a preponderance of the evidence? I'm not disputing that what your client said isn't true, but I'm saying from a purely legal standpoint when he has entered a denial by virtue of his answer and has to prove nothing how, how on earth can I find that by a preponderance of the evidence your client has established a case. She says it happened. He says it didn't. Does [that] not make the evidence equally balanced?"

**{¶ 33}** In conclusion, we note that because the domestic violence statutes give the courts decision-making authority, the courts have an obligation to carry out the legislative goals to protect the victims of domestic violence. In his article entitled "The Domestic Violence Civil Protection Order and the Role of the Court," Judge Michael J. Voris of the Clermont County Domestic Relations Court, cogently expressed this obligation:

"Advanced societies take intra-family violence seriously. Only in the last twelve years has this problem become a focus of attention and national concern. The Ohio Legislature has passed one of the most comprehensive * * * statutes authorizing Civil Protection Orders to combat domestic violence. Because the language of the statutes is broad, the response of the Court has a profound impact in protecting victims of domestic violence. Judges have the power and authority to implement the legislation. It is critical that Judges and Referees be aware of the severity of the domestic violence problem and make efforts to remain informed about the recent domestic violence legislation. Continuing education as to the realities of all forms of domestic violence will help to remove the shroud of secrecy and break the cycle of violence. Judges and Referees can play a leadership role in enlightening and educating attorneys, parties and the community in general about the severity of the domestic violence issues and the civil legal remedies that exist for victims of domestic violence. The Attorney General's Task Force on Family Violence urges Judges not to underestimate their ability to influence the respondent's behavior. Judges can communicate a powerful message about the justice system's view of domestic violence within their own courtrooms.

---

However, R.C. 3113.31 does not set forth the type of evidence to be considered by the court, other than to state that the proceeding should be handled as any other civil action, nor does it require any corroboration of the petitioner's own testimony. R.C. 3113.31(D).

"The Ohio Legislature has made a laudatory beginning in responding to the problems of domestic violence. The legislation that provides for Civil Protection Orders is responsive to the immediate needs of the victims and provides a necessary alternative and supplement to criminal legal remedies. However, the legislation cannot achieve its full potential without the careful and responsible utilization by Judges and Referees." (Footnotes omitted.) Voris, The Domestic Violence Civil Protection Order and the Role of the Court (1990), 24 Akron L.Rev. 423, 432. See, also, Recommendations to the Supreme Court of Ohio, Goal 4, Report of the Supreme Court of Ohio Domestic Violence Task Force (1996), at 18.

{¶ 34} The consequences of domestic violence are serious and severe. Protection orders can be an effective tool when used in conjunction with provisions in divorce and dissolution decrees and other separation agreements. Ohio's courts must make themselves aware of the authority they have been granted by the legislation to implement all of these protection orders.

{¶ 35} Accordingly, we reverse the judgment of the court of appeals and remand the cause to the trial court for an order granting appellant's petition for a protection order and for the trial court to fashion that protection order pursuant to its authority as granted in R.C. 3113.31.

*Judgment reversed*
*and cause remanded.*

MOYER, C.J., DOUGLAS, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____