[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Herbert Dean Sitton appeals from a judgment of the domestic relations court that imposed upon him a civil protection order pursuant to R.C. 3113.31. For the reasons that follow, the judgment of the domestic relations court will be affirmed.
This matter was initiated upon the filing of a petition for domestic violence against Mr. Sitton by his wife, Carol Ann Sitton. In her petition, Mrs. Sitton alleged that on January 19, 1998, Mr. Sitton threatened to kill both her and himself, that he had access to guns and other weapons, that he had in the past threatened to kill her, and that she was in fear for her life. Mrs. Sitton filed an affidavit in support of her claims.
In response to Mrs. Sitton's petition, the domestic relations court issued an ex parte civil protection order against Mr. Sitton pursuant to R.C. 3113.31. A full hearing was subsequently held on Mrs. Sitton's petition, at which both Mr. and Mrs. Sitton testified. In addition, the hearing also concerned a similar petition for a civil protection order that Mr. Sitton had filed against his wife as a result of an incident that occurred subsequent to the one that gave rise to Mrs. Sitton's petition.
Following the full hearing, the court's magistrate issued a decision granting Mrs. Sitton's petition for a permanent civil protection order. The magistrate made extensive findings of fact based on the testimony elicited at the hearing. Concerning the incident of January 19, 1998 that gave rise to Mrs. Sitton's petition, the magistrate found, inter alia:
 * * * On January 19, 1998, Petitioner was in her bedroom getting dressed and the Respondent came into the room and asked her what was going on concerning the tension between them. She advised that he took $60,000 in escrow from the house and took money from their joint accounts.
Respondent said he was trying to save the business and that he didn't think there was anything left to do but to shoot her and himself and he had nothing else to lose. There was no gun in his hands at this time. He has numerous weapons. The Sheriff took about one hundred weapons from the residence. He has always threatened to kill himself or her and has done so in the past year. In the past, Respondent knew Petitioner had been suicidal and he left a loaded gun by her.
A couple of days after the January 19, 1998, incident she came back to the house after hiding out from him and was very fearful of him. She is under the care of a doctor and counselor concerning her problems. She has no money and no place else to live. None of her relatives will allow her to live with them because of the violence by the Respondent.
 * * *
* * * [The Respondent] has numerous guns in a safe in the basement in a locked room. The guns are not loaded and he last removed one of the guns during a gun show sometime in November of 1997. He has a gun dealer's license for about nine years issued by the Federal Government. He has about seventy-five guns of all types at his residence. At about 8:00 p.m. on January 19, 1998, the parties talked and he asked her to tell him what was going on. She said he had been lying to her and that she was going to leave. He left and went to work and she later showed up at his work. He was aware that she was on medication prior to that day. He has been aware that she had more than one personality over the years. He denies saying anything about killing her or himself. * * * In addition, the magistrate found that the facts contained in Mrs. Sitton's petition were true in that Mr. Sitton engaged in domestic violence against her as defined in R.C. 3113.31 (A).
Mr. Sitton filed objections and supplemental objections to the magistrate's decision. Although a number of "objections" were listed, the objections essentially presented two lines of argument. First, Mr. Sitton claimed that the magistrate's findings were against the manifest weight of the evidence. Second, Mr. Sitton appears to have argued that even if he engaged in the conduct found by the magistrate, his actions did not constitute domestic violence under the applicable statute.
The trial court overruled Mr. Sitton's objections to the magistrate's decision and essentially adopted the magistrate's decision and order as its own. Mr. Sitton filed a timely notice of appeal and now presents a single assignment of error for our review.
 ASSIGNMENT OF ERROR THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FOUND THAT APPELLEE PROVED BY A PREPONDERANCE OF EVIDENCE UNDER R.C. 3113.31 (D) THAT SHE DESERVED A RESTRAINING ORDER AGAINST APPELLANT.
Pursuant to R.C. 3113.31(D), a domestic relations court is authorized to grant a temporary order on an ex parte basis to protect an individual from domestic violence. Following the issuance of the temporary ex parte order, the court is to schedule a full hearing on the domestic violence petition. Following the full hearing, "the court may grant any protection order, with or without bond, or approve any consent agreement to bring about a cessation of domestic violence against the family or household members." R.C. 3113.31(E)(1).
"The statutory criterion to determine whether or not to grant a civil protection order pursuant to R.C. 3113.31 is the existence or threatened existence of domestic violence." Thomas v. Thomas
(1988), 44 Ohio App.3d 6, 8. Moreover, "[w]hen granting a protection order, the trial court must find that petitioner has shown by a preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence. R.C. 3113.31(D)." Felton v. Felton (1997), 79 Ohio St.3d 34, paragraph two of the syllabus.
The civil domestic violence statute states, in relevant part:
A) As used in this section:
 1) "Domestic violence" means the occurrence of one or more of the following acts against a family or household member:
* * *
 b) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 or 2911.211 of the Revised Code;
* * *
R.C. 3113.31(A) (1) (b).
R.C. 3113.31 does not define "force" or "serious physical harm." However, R.C. 2901.01 provides, in pertinent part:
(A) As used in the Revised Code:
 (1) "Force" means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing.
* * *
 (5) "Serious physical harm to persons" means any of the following:
 (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 (b) Any physical harm that carries a substantial risk of death;
 (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 (d) Any physical harm that involves some permanent disfigurement, or that involves some temporary, serious disfigurement;
 (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering, or that involves any degree of prolonged or intractable pain.
The decision as to whether to grant a civil protection order lies within the sound discretion of the trial court. Deacon v.Landers (1990), 68 Ohio App.3d 26, 31. Accordingly, the court's decision should not be reversed absent an abuse of that discretion. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
Mr. Sitton essentially contends that the court's judgment is against the manifest weight of the evidence. A party who seeks reversal of a lower court's judgment on that basis undertakes a difficult task. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Const. Co. (1978), 54 Ohio St.2d 279, syllabus. The issue for review thus becomes whether there is any competent, credible evidence to support the court's determination that Mr. Sitton's conduct on January 19, 1998 constituted domestic violence.
Mrs. Sitton testified that on January 19, 1998, her husband approached her in their bedroom about the tension that existed between them. She complained to him that he had taken money from the house escrow account and from their joint bank accounts without her knowledge. Mr. Sitton responded that he was trying to save his business. He further said to Mrs. Sitton that "I might as well just shoot both of us, you and me, because there's nothing that — nothing to lose anyway." Transcript of Proceedings, February 3, 1998, at pgs. 6-7. Although Mr. Sitton did not have a gun in his hand at the time he made the threat, there were numerous guns in the house to which he had access. The fact that Mr. Sitton was a licensed gun dealer and that the guns were locked in the basement does not negate the fact that the guns were available to him.
Mrs. Sitton also testified that Mr. Sitton had threatened to kill her on other occasions in the past year. Further, she testified that "I mean I already knew what he was going to do from what he did with leaving that loaded gun when he knew I was suicidal and he left it right where he knew I'd find it." Id., at 9.
Mrs. Sitton testified as to her fear of Mr. Sitton. She vacated their residence on the day of the incident and hid out from him. She returned to the residence a few days later to obtain her medicine while accompanied by a police officer. A few days later, she returned again under the belief that the temporary protection order had already been served on her husband. She also testified that she was unable to stay with relatives because they also were afraid of her husband.
Mr. Sitton's primary argument appears to be that due to her history of suffering from multiple personalities, any fear that Mrs. Sitton may have had was fictionalized, perceived fear based on irrationality. Nevertheless, Mr. Sitton presented no evidence that his wife was suffering from any delusional thought processes on the day in question. Moreover, although aware of Mrs. Sitton's mental history, the court made a factual finding that she was very fearful of her husband. That finding is supported not only by her own direct testimony of fear, but also by her actions in vacating the house on the day of the incident, hiding out from her husband, and returning to the residence only when she was either accompanied by a police officer or at a time when she believed a protection order had been served on her husband. Further, in view of Mr. Sitton's threats to kill his wife and his access to weapons, we cannot conclude that Mrs. Sitton lacked an objective basis to fear her husband. In short, on this record, Mr. Sitton's allegation that his wife's fear is fictionalized and irrational does not serve as a basis to overturn the trial court's decision.
Mr. Sitton also argues that he has no history of domestic violence and that he, rather than his wife, was in danger of harm because on an occasion subsequent to the January 19, 1998 incident, his wife attempted to strike him with a rock. Nevertheless, these facts do not preclude a finding that Mr. Sitton engaged in domestic violence on January 19, 1998.
In short, based on our review of the record, there is competent, credible evidence to support the court's factual findings. Those findings support a conclusion that Mr. Sitton engaged in domestic violence in that he placed his wife, through the threat of force, in fear of imminent serious physical harm.See R.C. 3113.31(A)(1)(b). Accordingly, the trial court did not abuse its discretion in issuing a civil protection order against Mr. Sitton.
Mr. Sitton's sole assignment of error is overruled.
 CONCLUSION
Having overruled Mr. Sitton's sole assignment of error, the judgment of the trial court will be affirmed.[1]
BROGAN, J. and WOLFF, J., concur.
Copies mailed to:
Deborah C. Schram
James R. Kirkland
Hon. Charles A. Lowman
[1] Without assigning any error, Mr. Sitton also includes in his brief a section regarding attorney fees. Mr. Sitton argues that if we remand this matter to the trial court, he should be awarded attorney fees. It is not clear whether he is asking us to award attorney fees in connection with this appeal or whether he is asking us to direct the trial court to award attorney fees in connection with the proceedings below. Putting aside a number of procedural problems inherent in his request for attorney fees, the matter is moot in view of our affirmance of the trial court's judgment.