OPINION
Defendant-appellant Kathleen Lapsansky appeals the decision of the Columbiana County Common Pleas Court, Domestic Relations Division, which overruled her objections to two separate decisions of the magistrate. For the following reasons, the trial court's judgment is affirmed in part and reversed in part.
 STATEMENT OF FACTS
The parties were divorced in November 1998 after six years of marriage. On April 29, 1999, appellant filed two motions. In one of the motions, appellant sought the issuance of a Civil Protection Order (CPO) against her former spouse plaintiff-appellee Richard Lapsansky. This motion alleged that appellee was harassing, stalking, and threatening her and interfering with her court-ordered move from his home. Appellant also filed a motion for relief from the divorce judgment, or modification thereof, pursuant to Civ.R. 60 (B) (3), alleging that she discovered evidence that appellee concealed or undervalued marital assets.
A hearing on the request for a CPO proceeded before a magistrate. On May 17, 1999, the magistrate denied the CPO, characterized the request as frivolous and ordered appellant to pay attorneys' fees to appellee in the amount of $300. Appellant filed timely objections to this decision. Next, the hearing on the motion for relief from judgment took place. On June 25, 1999, the magistrate denied this motion and ordered appellant to pay $400 in attorneys' fees to appellee. Appellant filed timely objections to this decision as well.
The trial court then heard oral arguments on the objections to both decisions. On September 13, 1999, the court overruled appellant's objections. Timely appeal to this court ensued. Appellant, acting pro se, filed a single-spaced brief in ten point font. Pursuant to App.R. 19 (A) and (B), a brief must be double-spaced in twelve point font. After appellee responded, appellant filed an unacceptable reply brief. Firstly, this reply brief purported to be a reply to the present case and another pending appeal from the actual divorce decree. Appellant may not file a "joint brief" without this court's permission. Secondly, a reply brief may not exceed ten pages. Loc.R. IV(1). Appellant's reply brief was seventeen pages long, single-spaced and typed in ten point font. Thus, we refuse to consider the reply brief.
 ASSIGNMENTS OF ERROR
Appellant sets forth six assignments of error. However, these assignments are confusing and repetitive. Accordingly, we shall attempt to consolidate her arguments to a less confusing form. As best we can determine, appellant avers that: the court should have granted the motion for relief from judgment due to the allegations of newly discovered evidence of misrepresentation by appellee regarding the value of certain marital assets; the court should have granted the CPO; and attorneys' fees were improper on both decisions as the motions were not frivolous and the court failed to hold a hearing on the appropriateness and amount of fees.
 OVERRULING THE CIV.R. 60 (B) MOTION
Appellant contends that the court erred in failing to grant her Civ.R. 60 (B) motion. Apparently, while she was moving, appellant discovered receipts for some items that appellee had purchased during the marriage. Some of these items were not mentioned at the divorce trial and some of the items were valued lower at the trial than the receipts showed.
Appellant accuses appellee of lying because his answer to an interrogatory said, "I purchased . . ." She says that such a statement led the court to believe that certain items were separate property. With her newly-found receipts, she claims that she can prove that the items were marital property since they were purchased during the marriage. However, appellee's statement that he purchased certain items is not a misrepresentation that the items are separate property. Appellee specifically admitted that the items listed after "I purchased" were purchased two years prior to the date of the interrogatory, thus during the marriage.
We must also point out that it is inevitable that household goods depreciate over time. For instance, appellee valued a charcoal grill at $69 in his interrogatory. After the divorce, appellant brought the box from the grill to K-Mart and had the manager scan it. The manager wrote that the grill sold for $109 and that it was purchased in 1994. Thus, appellant now thinks that appellee lied and that she is entitled to the difference. However, a four year old grill is not worth the original purchase price. Furthermore, appellant had the opportunity to have the grill appraised prior to the divorce trial. Also, at the hearing before the trial court, appellee said that appellant can have the grill.
Appellant focuses much attention on a bedroom set. She found a receipt showing that $1,283.97 was paid in March 1996. She now complains that appellee's financial affidavit filed in November 1997 values the set at $1,200 and claims that it is separate property. A depreciation of $84 for a one and one-half year old bedroom set is not evidence of undervaluing. As for appellee's labeling the set as separate property, appellant could have contested this at the divorce. Also, a financial affidavit filed by appellee in November 1998 lists $1,383.97 in household goods and furniture as marital assets, (notice the similarity in amounts). Moreover, appellant admits to taking two of the dressers from this bedroom with her when she moved out.
She then complains about two videocameras. In the divorce decree, the court valued a Fuji videocamera at $1700 and labeled it as marital property. A Sears videocamera was disclosed in appellee's interrogatory as having a value of $600. Thus, appellee could have contested any problems with appellee's characterizations of this camera at the divorce hearing. Furthermore, it appears that, at the hearing before the trial court, appellee said that appellant can have the Sears camera.
Next, appellant takes issue with the value of the realty. At the divorce hearing, the house and property were determined to be appellant's separate property as he purchased it in full years prior to the marriage. The court divided the appreciation in the real estate which occurred during the marriage. Appellee's appraiser valued the home and property at $65,000, and the court set this amount as the value. Appellee now claims that she has evidence of misrepresentation. She presents print-outs from the auditor's office which value the property at $65,670. A $670 difference in the value of $65,000 worth of realty is hardly a misrepresentation. Additionally, the auditor's office does not always have accurate valuations, as their value is often an estimate made without an interior tour of the house. Lastly, these print-outs were available at the time of the divorce.
Appellant had the opportunity to have real and personal property appraised prior to the divorce. She also had the opportunity to contest appellee's characterizations and valuations. As appellee points out, the receipts that appellant now claims are newly discovered evidence had been in her sole possession, since she lived in the house by herself for a year prior to the divorce. Appellant fired multiple attorneys during the divorce proceedings. It appears that just prior to presentation of evidence in the divorce hearing, appellant fired another attorney. Now she attempts to argue points that could have been argued below and may have been argued had she retained her attorney.
In conclusion, appellant may not now relitigate the issues from the divorce trial. A Civ.R. 60 (B) motion may not attempt to relitigate claims that were or could have been made at trial or on appeal therefrom. See Doe v. Trumbull Cty. Children Serv. Bd.
(1986), 28 Ohio St.3d 128, 129; State ex rel. Durkin v. Ungaro
(1988), 39 Ohio St.3d 191, 192. See, also, Elyria Twp. Bd. ofTrustees v. Kerstetter (1993), 91 Ohio App.3d 599, 602. Hence, appellant failed to establish a meritorious claim to present and a proper ground for relief pursuant to GTE Automatic Elec., Inc.v. Arc Indus., Inc. (1976), 47 Ohio St.2d 146. For the foregoing reasons, the trial court did not err in denying appellant's Civ.R. 60 (B) motion.[1]
 ATTORNEYS' FEES ON THE CIV.R.60 (B) MOTION
At the motion hearing, appellee testified that he was seeking attorneys' fees and that he had spent approximately $300 to $400 in defending this motion. After denying the Civ.R. 60 (B) motion, the court granted $400 in attorneys' fees stating that appellant brought a motion which had no basis in law.
Appellant complains that pursuant to R.C. 2323.51(B)(2) (a-c), notice and a hearing are required before awarding attorneys' fees based upon frivolous conduct. This is true. Appellant also argues that even if the motion was frivolous for having no basis in law, it was not willfully frivolous as required under Civ.R. 11 where a hearing has been held unnecessary. Harris v. SouthwestGen. Hosp. (1992), 84 Ohio App.3d 77, 88.
However, this is a domestic relations case. In divorce proceedings, the court may award reasonable attorneys' fees to either party at any stage of the proceedings, including post-decree motions, if the court determines that the other party has the ability to pay the attorneys' fees that the court awards. R.C. 3105.18(H). An award of attorneys' fees in a domestic relations matter is committed to the sound discretion of the trial court. As such, the court's decision to grant attorneys' fees will not be reversed absent an abuse of discretion. Dunbarv. Dunbar (1994), 68 Ohio St.3d 369, 371; Rand v. Rand (1985),18 Ohio St.3d 356, 359.
Here, the court presided over various aspects of the divorce case and thus was aware of appellant's financial status. Moreover, appellee testified to his approximate expenditures on attorneys' fees in defending appellant's motion. Thus, it does not appear that the court abused its discretion in awarding $400 in attorneys' fees to appellee on appellant's Civ.R. 60 (B) motion. This $400 award of attorneys' fees is affirmed.
 OVERRULING THE MOTION FOR A CPO
Appellant's argument that the court erred by denying her request for a CPO is not fully briefed but is merely mentioned. Thus, we shall likewise spend little time on this argument. The court found that appellant presented insufficient evidence to support her allegations that appellee interfered with her move or was stalking and threatening her. After reviewing the transcript of the hearing before the magistrate, we must agree that insufficient evidence was presented.
Appellant was ordered to vacate appellee's house within ninety days from the date of the divorce decree. This date was then extended to March 15, 1999 by a magistrate. She did not vacate until April 29, 1999. One of appellant's complaints was that appellee had the electric turned off on March 30, 1999. However, appellee had no obligation to pay appellant's bills at that time. Appellant then accused appellee of stalking merely because he paid the phone bill and thus knew the telephone numbers she called if they were itemized on the phone bill. This is not evidence of stalking. She complained that he had caller-ID disconnected from his phone. Yet, this was his right.
She also said that he threatened her by asking a police officer if he could have her arrested for failing to move out of his house by the court-ordered date. This is not a threat but was a legitimate inquiry by a homeowner who is anxious to complete a court-ordered transfer. Appellant complained that on April 18 appellee interfered with her moving by coming to the house with his brother and videotaping in the back yard. Appellee testified that he believed that appellant had moved out.
She then testified that she noticed a car parked behind some pine trees and implied that appellee hired someone to spy on her. She stated that he destroyed the greenhouse in the backyard. However, her own witness, a police officer, testified that his opinion was that the plastic on the greenhouse cracked on the folds from cold and sun. He found no evidence of vandalism. She accused appellee of trying to break in the house and presented the police officer's testimony that there were scrape marks on the lock on the back door. However, the officer said that he did not know if the marks were fresh or old. He also opined that some scrapes could be the result of the noticeable misalignment of the door and frame or the result of the slip of a tool during an attempt to fix the misalignment. Appellant then blamed appellant for the fact that her car key broke off in the door of her car. She asked the police officer if someone could have poured acid on her car so that it would melt her key when she placed it in the door. The officer stated that it did not appear as if the key were melted.
Appellant had the burden to show that she was in danger of domestic violence by the preponderance of the evidence. Felton v.Felton (1997), 79 Ohio St.3d 34, 42. Appellant presented no evidence of threats or stalking. Her accusations amounted to mere conjuncture and suspicion. Thus, the court did not abuse its discretion by denying her motion for a CPO.
 ATTORNEYS' FEES ON THE MOTION FOR A CPO
After denying the CPO, the court granted $300 in attorneys' fees, stating that the motion for a CPO was frivolous. As aforementioned, a court may not award attorneys' fees for a frivolous motion that has no grounds to support it under R.C.2323.51 without first giving notice and holding a hearing. This procedure was not followed; thus, attorneys' fees were not available under R.C. 2323.51.
A court may not award attorneys' fees for a frivolous motion under Civ.R. 11 unless appellant willfully filed a frivolous motion. In this case, the court did not say that appellant's motion was willfully frivolous. The court merely stated that the motion for a CPO was frivolous because there was no evidence connecting appellee with any of the acts cited by appellant. Especially due to the fact that appellee has a history of domestic violence against appellant, we decline to infer from the court's judgment entry that willful conduct existed by appellant when she sought a CPO. She did witness appellant videotaping as she was moving out. She also could rightfully be frightened by the existence of scrape marks on the lock on the back door. Furthermore, since the court ordered attorneys' fees on its own initiative without notice to the parties that it was doing so, there was no evidence presented on the amount of reasonable attorneys fees. Thus, attorneys' fees were improper under Civ.R. 11.
As for R.C. 3501.18(H), this statute allows attorneys fees in divorce proceedings at any stage of the proceedings. However, appellant's motion for a CPO is not a stage in the divorce proceedings. Appellant did not seek a motion for contempt of the divorce decree which generally prohibited interference and stalking. Rather, appellant sought a CPO. Under R.C. 3113.53(A) (1) (b), a domestic violence CPO may be sought if a former spouse is in fear of imminent serious physical harm due to a threat of force. Seeking such a CPO is not a part of a divorce as is a post-decree motion to modify, vacate or enforce. See Felton v.Felton (1997), 79 Ohio St.3d 34, 37 (stating that a court may issue a CPO even though a divorce decree already prohibits harassment). See, also, Civ.R. 75 (G) (stating that a claim for a domestic violence CPO shall be a separate claim from a claim for divorce). Because a CPO is not a stage in divorce proceedings, attorneys' fees were not available under R.C. 3501.18(H). For all of the foregoing reasons, attorneys' fees on appellant's motion for a CPO were not proper under any of the available paths leading to an award of such fees.
For the foregoing reasons, the judgments of the trial court which denied the Civ.R. 60 (B) motion and the CPO are affirmed. The award of $400 in attorneys' fees on the Civ.R. 60 (B) motion is also affirmed. However, the award of $300 in attorneys' fees on the motion for a CPO is reversed.
Cox, P.J., concurs, Waite, J., concurs.
 _________________________ JOSEPH J. VUKOVICH, JUDGE
[1] Appellant's motion for relief lists other items of undervaluation, but her appellate brief does not. Thus, we need not review these items.