OPINION
This appeal is taken by Erika Hershberger ("Appellant") from a judgment rendered by the Domestic Relations Division of the Common Pleas Court of Seneca County overruling Appellant's objections to a magistrate's decision and dismissing a civil protection order ("CPO") with prejudice. For the reasons expressed in the following opinion, we reverse the judgment of the trial court and remand the matter for further proceedings.
The record demonstrates that on January 10, 2000, Appellant filed a petition for a CPO on behalf of herself and the parties' two minor children in the trial court pursuant to R.C. 3113.31. The petition alleged that Appellant's spouse, Stephen Hershberger ("Appellee"), committed acts of domestic violence on January 3, 2000, when he pushed, kicked, and punched Appellant, causing her to chip a tooth and sustain bruises. Among other things, Appellant requested the court to designate her as residential parent, and to order Appellee to pay support for the maintenance of his spouse and children.
On the day of the filing, the court conducted an ex-parte hearing and issued a temporary CPO enjoining Appellee from harming or threatening to harm Appellant, and from coming within 300 feet of her. The order did not deal with either the allocation of parental rights and responsibilities of the children, or support for the petitioner or the children. In fact, it appears from the record that the children continued to reside with their father while Appellant vacated the marital home. The court specified that the temporary CPO was effective until January 24, 2000, when a full hearing on the matter would take place.
In the meantime, Appellee apparently filed a complaint for legal separation in the trial court under a separate case number on January 18, 2000. In conjunction with the initial pleading, Appellee filed various motions, including a motion for temporary orders regarding the allocation of parental rights and responsibilities and support. Appellee also requested the court to issue a mutual restraining order directing the parties to refrain from, among other things, abusing or harassing each other during the separation proceeding.
The magistrate continued the hearing on Appellant's petition to allow time to resolve Appellee's motion for temporary orders, and indicated in the entry that the CPO would be dismissed once the temporary orders had been established. Thereafter, the court granted Appellee's motion for temporary orders, evidently including a mutual restraining order. In accordance with his previous decision, the magistrate then dismissed Appellant's petition and the temporary CPO.
Appellant filed timely objections to the decision. However, the trial court overruled the objections by entry dated April 3, 2000. The trial judge reasoned that R.C. 3113.31 does not require a domestic relations court to "track" two restraining orders at one time, and stated that the statute requires the termination of a CPO once the court issues an order regarding parentage and/or support in a separation proceeding. This appeal followed.
Appellant asserts the following as her only assignment of error:
 The Court's decision to dismiss Appellant's petition for a civil protection order and ex-parte civil protection order without a full hearing, on grounds that temporary orders were issued and that a restraining order issued in a concurrently pending legal separation would purportedly provide Appellant with the same level of protection, is plain error and an abuse of discretion in contradiction of statutory law, case law, Ohio Rules of Civil Procedure, and public policy, and a denial of the Petitioner's due process rights under the law.
Our determination of this appeal requires us to address two primary issues. The first of which is whether, under R.C. 3113.31, a trial court is required to dismiss a CPO when either the individual seeking protection or the respondent files a subsequent complaint for divorce, dissolution of marriage, or legal separation, accompanied by a motion for temporary orders regarding parentage and/or support. After reviewing the language contained in the relevant sections of the statute, we answer in the negative.
The Ohio Revised Code allows individuals to obtain a CPO for protection from incidents of domestic violence by filing a petition for relief in the trial court. R.C. 3113.31(C). The petition must contain an allegation of domestic violence, as that term is defined in R.C.3113.31(A)(1); a statement of the relationship between the petitioner and respondent, or of the relationship between the respondent and the victim, if someone other than the petitioner; and a request for relief. R.C. 3113.31(C)(1)-(3).
After conducting an ex-parte or full hearing on the matter, the court may grant a CPO, which may, among other things, direct the respondent to refrain from abusive behavior toward the petitioner or those individuals seeking relief; require the respondent to obtain counseling; and prohibit the respondent from entering the residence, business, place of employment or school of the petitioner or those individuals seeking relief. R.C.3113.31(E)(1). In addition to these features, a CPO may:
 (d) Temporarily allocate parental rights and responsibilities for the care of, or establish temporary visitation rights with regard to, minor children, if no other court has determined, or is determining, the allocation of parental rights and responsibilities for the minor children or visitation rights; [and]
 (e) Require the respondent to maintain support, if the respondent customarily provides for or contributes to the support of the family or household member, or if the respondent has a duty to support the petitioner or family or household member;
R.C. 3113.31(E)(1)(d) (e).
Depending upon the specific order of the court, a CPO could remain valid for up to five years from the date of issuance. R.C.3113.31(E)(3)(a). Furthermore, the petitioner may renew the order once the specified time limit has expired. R.C. 3113.31(E)(3)(c).
R.C. 3113.31(E)(3)(b) contains an exception to these general time limitations:
 Subject to the limitation on the duration of an order * * * set forth in division (E)(3)(a) of this section, any order under division (E)(1)(d) of this section shall terminate on the date that a court in an action for divorce, dissolution of marriage, or legal separation brought by the petitioner or respondent issues an order allocating parental rights and responsibilities for the care of children * * *. Subject to the limitation on the duration of an order set forth in division (E)(3)(a) of this section, any order under division (E)(1)(e) of this section shall terminate on the date that a court in an action for divorce, dissolution of marriage, or legal separation brought by the petitioner or respondent issues a support order * * *. [emphasis added.]
In accordance with the clear language contained in R.C. 3113.31(E)(3)(b), we find that in the event that a court issues an order of allocation of parental rights and/or an order of support in a separate proceeding for divorce, dissolution of marriage, or legal separation, the court is required to terminate only that portion of the CPO which speaks to those specific issues. The remaining provisions of the CPO are to remain in effect for as long as the trial court has ordered. Contrary to the trial court's assessment, we find no indication that the legislature intended a different result.
Therefore, we conclude that the trial court erred, as a matter of law, in its determination that Appellant's petition and temporary CPO should automatically terminate as a result of the establishment of temporary orders on parental rights and support in the separation action. Additionally, we find it interesting to note that in this case, the temporary CPO did not address these issues since the parties' minor children were apparently living with Appellee at the time. Thus, even if the trial court was correct in its interpretation of the statute, the facts of this case could not have supported a dismissal on these grounds in any event.
The next issue we must address is whether the considerations of judicial economy and convenience are important enough to justify the dismissal of a CPO when the parties are also subject to a mutual restraining order issued in a divorce, dissolution of marriage, or legal separation proceeding. Again, we answer this question in the negative.
In Felton v. Felton (1997), 79 Ohio St.3d 34, 679 N.E.2d 672, the Supreme Court of Ohio held, at the syllabus, that "[a] court is not precluded by statute or public policy reasons from issuing a protection order pursuant to Ohio's civil domestic violence statute, R.C. 3113.31, where the parties' dissolution or divorce decree already prohibits the parties from harassing each other." See also, R.C. 3113.31(G) which provides, "[t]he remedies and procedures provided in this section are in addition to, and not in lieu of, any other available civil or criminal remedies."
In its entry overruling Appellant's objections to the magistrate's decision, the trial court apparently interpreted the Felton holding to mean that a court should freely exercise its discretion to dismiss a CPO when the parties are already subject to a mutual restraining order because it would be inconvenient to monitor two similar orders in two separate cases. This analysis is simply not cogent, given the policy concerns behind the implementation of the CPO statute, and the fundamental differences between a CPO and a civil restraining order.
With regard to policy concerns, the Felton court stated:
 The General Assembly enacted the domestic violence statutes specifically to criminalize those activities commonly known as domestic violence and to authorize a court to issue protection orders designed to ensure the safety and protection of a complainant in a domestic violence case.
Id. at 37, 679 N.E.2d at 675 [citations omitted]. The Court also took great pains to mention compelling statistical data on the subject of domestic violence:
 Women who are divorced or separated are at higher risk of assault than married women. The risk of assault is greatest when a woman leaves or threatens to leave an abusive relationship. Nonfatal violence often escalates once a battered woman attempts to end the relationship. Furthermore, studies in Philadelphia and Chicago revealed that twenty-five percent of women murdered by their male partners were separated or divorced from their assailants. Another twenty-nine percent of women were murdered during the separation or divorce process. State statutes need to protect women and children during and after the break-up of relationships because of their continuing, and often heightened, vulnerability to violence. [citations omitted]
Id. at 39-41, 679 N.E.2d 675, quoting Klein and Orloff, Providing Legal Protection for Battered Women: An Analysis of State Statutes and Case Law (1993), 21 Hofstra L.Rev. 801, 816. These statistics demonstrate that domestic violence, especially between estranged partners, is a frightening reality in today's society. Trial courts must utilize all authority that the legislature has bestowed in an effort to stop domestic violence, rather than ignore it or regard it as just another negligible effect of an unhappy relationship.
The Felton court also noted several crucial differences between a CPO and a mutual restraining order contained in a divorce decree or similar entry. First, the court explained that the penalties for violating a CPO are "considerably more substantial and punitive and thus more deterring than those for violating a court's judgment entry." Felton,79 Ohio St.3d at 39, 679 N.E.2d at 676. This is because a person who violates the conditions of a CPO is subject to criminal prosecution under R.C.2919.27, as well as punishment for contempt of court. Id.; R.C.3113.31(L).
A violation of a CPO is generally classified as a misdemeanor of the first degree. Id.; R.C. 2919.27(B)(1)(a). The penalty for a misdemeanor of the first degree is a jail term of not more than six months and/or a fine of not more than $1,000. Id.; R.C. 2929.21. In the event that a person has been previously convicted of or pleaded guilty to two or more violations of R.C. 2903.211 (menacing by stalking) or R.C. 2911.211
(aggravated trespass), which involve the same person seeking relief from a CPO, the offense for violating a CPO is then classified as a felony of the fifth degree. Id.; R.C. 2919.27(B)(1)(b). A felony of the fifth degree subjects the offender to a maximum term of imprisonment of twelve months or various community control sanctions and/or a fine of not more than $2,500. Id.; R.C. 2929.13 through 2929.18.
In contrast, a person who violates a restraining order contained in a domestic relations entry is subject only to the penalties for contempt of court rather than criminal prosecution. Felton at 39-40,679 N.E.2d at 675-676. A first offense for contempt of court carries a penalty of not more than thirty days in jail and/or a maximum fine of $250; a second offense subjects the violator to not more than sixty days in jail and/or not more $500 in fines; and a third or greater offense subjects the violator to not more than ninety days in jail and/or a maximum fine of $1,000. Id.; R.C. 2705.05(A).
The Felton court next noted the fact that a violator of a CPO is subject to a "preferred-arrest policy". Id. at 39, 679 N.E.2d at 676.
 The preferred-arrest policy states that if a peace officer has reasonable grounds to believe that a violation of a protection order has been committed and reasonable cause to believe that a particular person is guilty of committing the offense, it is the preferred course of action in this state that the officer arrest and detain that person * * * until a warrant can be obtained.
Id.; R.C. 2935.03(B)(3)(b). An officer who does not comply with the preferred-arrest policy is required to "articulate in the written report of the incident * * * a clear statement of the officer's reasons for not arresting and detaining that person until a warrant can be obtained."Id.; R.C. 2935.03(B)(3)(c). No similar policy applies to a case of contempt of court. Felton, 79 Ohio St.3d at 39, 679 N.E.2d at 676.
Third, the Ohio Revised Code mandates that a copy of the CPO be issued to all law enforcement agencies with jurisdiction to enforce the order.Id.; R.C. 3113.31(F)(1). As a result, all law enforcement agencies are required to establish and maintain an index of the CPO issued to them.Id.; R.C. 3113.31(F)(2). In addition, regardless of whether the CPO has been sent to the agency in the county of a law enforcement officer's jurisdiction, any law enforcement officer shall enforce a CPO issued by any court in this state. Id.; R.C. 3113.31(F)(3). "With this statewide enforcement, communication, indexing, and authority, enforcement of the protection order is much more apt to occur than a contempt order."Felton, 79 Ohio St.3d at 39, 679 N.E.2d at 676.
Finally, the manner of enforcement of a CPO is much simpler and faster than that involving an allegation of contempt of court. "Upon threat of a violation of a civil protection order, a petitioner need only call the police, who are available at all times of the day or night. By contrast, in order to enforce a provision in a dissolution or divorce decree, the petitioner must move the court to find the violator in contempt." Id. An action for contempt of court necessarily takes much longer due to procedural rules and crowded dockets, and generally requires the employment of an attorney to assist in the process. Id. "The police, by enforcing a protection order, are thus in a much better position than is the court, through a contempt action, to prevent further domestic violence." Id. at 40, 679 N.E.2d at 676.
We find that the foregoing policy concerns, and the fundamental differences between a CPO and a mutual restraining order contained in a domestic relations decree to be of the utmost significance. As the Supreme Court pointed out in Felton, "because the domestic violence statutes give the courts decision-making authority, the courts have an obligation to carry out the legislative goals to protect the victims of domestic violence. * * * Protection orders can be an effective tool when used in conjunction with provisions in divorce and dissolution decrees and other separation agreements. Ohio's courts must make themselves aware of the authority they have been granted by legislation to implement all of these protection orders." Id. at 44-45, 679 N.E.2d at 680. Accordingly, we conclude that the trial court erred in summarily dismissing Appellant's petition and the temporary CPO.
Appellant's assignment of error is sustained.
Having found error prejudicial to the Appellant herein, in the particulars assigned and argued, the judgment of the trial court is hereby reversed and the matter is remanded for further proceedings. Appellant's petition is reinstated and the court is instructed to conduct a full hearing on the matter of the CPO as originally ordered.
 __________________________ WALTERS, J.
SHAW and BRYANT, JJ., concur.