DECISION AND JUDGMENT ENTRY
Randy L. Patterson appeals a Gallia County Court of Common Pleas judgment that entered a domestic violence civil protection order ("CPO") against him. Mr. Patterson assigns a single error for our review:
 The Honorable Judge Joseph Cain committed reversible error by finding that appellant Randy L. Patterson committed whatever the judge said he did, because I can't read the judge's writing in the court entry, attached hereto as Exhibit A.[2]
We find no merit in the assignment of error and affirm the trial court's judgment.
 I.
On January 25, 1999, Debra Gooderham filed a petition for a domestic violence CPO in the Gallia County Court of Common Pleas, pursuant to R.C. 3113.31. Ms. Gooderham sought protection from the appellant, with whom she had cohabited before breaking off the relationship in December 1998. The petition requested an order forbidding the appellant from harming, threatening, following, stalking, contacting, or otherwise harassing her or her daughters. Attached to the petition were police reports describing numerous instances in which the appellant allegedly harassed Ms. Gooderham, including an incident in which the appellant broke into Ms. Gooderham's home in December 1998. Ms. Gooderham also requested an ex parte CPO pending the full hearing on her CPO. The court granted an ex parte CPO and conducted a full hearing on Ms. Gooderham's petition on February 2, 1999.
At the hearing, Ms. Gooderham testified that she and the appellant were involved in a romantic relationship from May until early December 1998. After she broke off the relationship, Ms. Gooderham testified to numerous instances of harassment that made her fearful of the appellant. Ms. Gooderham testified to receiving numerous unwanted phone calls and being followed by the appellant to her workplace. Ms. Gooderham also testified that the appellant followed her during a date with another man. Ms. Gooderham also described how the appellant broke into her home through a window while she and the children were not there. Ms. Gooderham's two daughters also testified at the hearing and recounted many of these same events.
The appellant testified on his own behalf and admitted to many of the incidents. He acknowledged breaking into the appellant's home, but noted that he did so because he needed to retrieve a pair of shoes he had left at the house. The appellant also noted that Ms. Gooderham had called him numerous times and spent time with him on her own accord after the couple had broken off the relationship. The appellant also insisted that Ms. Gooderham followed and harassed him.
The trial court found that the appellant had engaged in domestic violence by "stalking" and "menacing" Ms. Gooderham within the meaning of R.C. 3113.31 and R.C. 2903.211. The appellant entered a CPO ordering the appellant to refrain from "harming, attempting to harm, threatening, molesting, following, stalking, bothering, harassing, annoying, contacting, or forcing sexual relations upon" Ms. Gooderham or her family. The CPO also forbid the appellant from initiating any contact by telephone. The CPO is to remain in effect for five years.
Following issuance of the GPO, the appellant requested findings of fact and conclusions of law. The trial court's findings stated that the appellant had: (1) broken into Ms. Gooderham's home, (2) followed Ms. Gooderham "at different times," (3) "accosted" Ms. Gooderham while on a date with a male friend, (4) made numerous phone calls to Ms. Gooderham's home and workplace, and (5) followed petitioner to her workplace to watch her at work. Based on these findings of fact, the court concluded that the appellant had committed domestic violence by "both trespass * * *" as well as stalking and menacing * * *." The appellant commenced this appeal.
 II.
In his only assignment of error, the appellant contends that the trial court should not have entered a domestic violence GPO against him. Significantly, the appellant's brief does not cite a single case or statute in support of the lone assignment of error. A reviewing court may properly disregard any assignment of error that fails to present any citations to case law or statutes in support of its assertions. Meerhoff v. Huntinqton Mtge. Co.
(1995), 103 Ohio App.3d 164, 169; State ex rel. Jackson CountyDent. of Human Serv. (June 20, 1997), Jackson App. No. 96CA790, unreported. In the interests of justice, however, we will decide this appeal on the merits.
The General Assembly enacted R.C. 3113.31 to authorize courts to issue protection orders designed to ensure the safety and protection of a domestic violence complainant. Felton v. Felton
(1997), 79 Ohio St.3d 34, 37. Before issuing a domestic violence GPO under R.G. 3113.31, a court must find that the petitioner has shown by a preponderance of the evidence that the petitioner (or a member of the petitioner's family or household) is in danger of domestic violence. Id. at paragraph two of the syllabus. R.C.3113.31 (A) (1) defines "domestic violence" as:
 * * * the occurrence of one or more of the following acts against a family or household member:
 (a) Attempting to cause or recklessly causing bodily injury;
 (b) Placing another person by threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211
[menacing by stalking] or 2911.211
[aggravated trespass] of the Revised Code;
 (c) Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code.
Initially, we take this opportunity to clarify our standard of reviewing a trial court's decision regarding a domestic violence GPO issued under R.C. 3113.31. This court has previously held that the decision to issue a domestic violence GPO rests in the sound discretion of the trial court. Deacon v. Landers
(1990), 68 Ohio App.3d 26, 31. Subsequent to Deacon,
however, we have reviewed the issuance of a GPO using a "manifest weight of the evidence" standard, i.e. ascertaining whether the trial court's decision was supported by some competent, credible evidence.Conkle v. Wolfe (Nov. 18, 1998). Athens App. No. 98CA02, unreported; Snyder v. Snyder (Aug. 15, 1995), Ross App. No. 94CA2068, unreported, citing Morris v. Foley Construction Co.
(1978), 54 Ohio St.2d 279, syllabus. The latter cases, particularly in light of the Supreme Court's decision in Felton,supra, illustrate the appropriate standard.
In Felton, the Supreme Court held that: "When granting a protection order, the trial court must find that the petitioner has shown by a preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence." Felton at paragraph two of the syllabus, citing R.C. 3113.31 (D). Felton thus clarified that a petitioner must meet a requisite standard of proof before a trial court may issue a CPO.[3] Therefore, on appeal of the trial court's granting of a GPO, the question is whether the petitioner satisfied the burden, i.e. whether there is competent, credible evidence to support the trial court's issuance of a GPO. See id.
at 43 (analyzing the record for "competent, credible evidence" to support a finding of domestic violence). Felton has therefore defined the contours of a trial court's discretion when deciding whether or not to grant a domestic violence CPO under R.C.3113.31. This is essentially a manifest weight of the evidence review.
The trial court specifically found that the appellant committed domestic violence by engaging in activity that constitutes menacing by stalking under R.C. 2903.211. See R.C. 3113.31 (A) (1) (b) (defining "domestic violence" to include a violation of R.C. 2903.211). R.C. 2903.211 (A) states:
 No person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person.
We give due deference to the trial court's factual findings because the trial court was in the best position to view the witnesses and weigh the credibility of the proffered testimony.Conkle, supra, citing Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80. In this case, the trial court's finding that the appellant committed menacing by stalking is supported by competent, credible evidence. Ms. Gooderham and her children testified that the appellant broke into their home in December 1998, after Ms. Gooderham had broken off the parties' relationship. The record also contains testimony that the appellant followed Ms. Gooderham more than once. On one occasion, the appellant followed Ms. Gooderham as she was on a date with another man. During this encounter, the appellant came up to the car driven by Ms. Gooderham's companion and yelled, "I love this woman." Ms. Gooderham also stated that the appellant followed her to work. Finally, the record contains testimony that the appellant made numerous unwanted telephone calls to Ms. Gooderham at her home and at her workplace. Ms. Gooderham testified that these incidents made her fear what the appellant might do to her or to her family and friends. Further, at the hearing, the appellant himself admitted committing a number of the acts alleged, including breaking into Ms. Gooderham's home, following Ms. Gooderham, and making numerous phone calls. The record therefore contains competent credible evidence that the appellant engaged in menacing by stalking, therefore warranting a GPO. Cf.State v. Benner (1994), 96 Ohio App.3d 327, 330-31 (allegations that defendant followed victim twice and drove around victim's apartment complex to watch her were sufficient to state a violation of R.C. 2903.211); Cleveland v. Rhoades (July 29, 1999), Cuyahoga App. No. 74572, unreported (five separate occasions of uninvited visits sufficient to support stalking conviction under R.C. 2903.211); State v. Woodgeard (Apr. 29, 1994), Fairfield App. No. 45-CA-SEP-1993, unreported (defendant's acts of driving past victim's home and making harassing phone calls supported stalking conviction).
While the appellant admits to a number of acts relied upon by the trial court to issue the GPO, he notes that most of them happened in December 1998. The appellant points out that many of these actions therefore took place prior to any "charge" of domestic violence against him, i.e. before Ms. Gooderham's GPO petition and the ex parte temporary GPO issued against him. The appellant also urges us to recognize that the record contains no evidence of any physical violence by either party. These arguments do not warrant reversal of the GPO against the appellant. R.C. 3113.31 authorizes a trial court to issue a GPO when a petitioner has shown by preponderance of the evidence that there is a danger of domestic violence against the petitioner, the petitioner's family, or a member of the petitioner's household. Felton, supra, 79 Ohio St.3d at 42. There is no requirement in the statute that the respondent have committed some act of domestic violence after filing of a GPO petition in order to justify granting the GPO. Further, the appellant's argument that no "physical violence" has taken place fails to appreciate the scope of R.C. 3113.31. "Since the statute is designed to prevent future violence, the court looks for the danger of future violence, not proof of past violence. Actual prior physical harm, while helpful, is not necessary for a finding that a petitioner is in danger of domestic violence." Adrine and Ruden, Ohio Domestic Violence Law (1999 ed.) 266-67, Section T10.10. Moreover, physical violence is only one form of domestic violence. R.C. 3113.31's definition of domestic violence encompasses acts of stalking, which the trial court found the appellant to have committed. Thus, the lack of physical abuse does not foreclose a finding that a petitioner is in danger of domestic violence and entitled to a GPO.
We take note of one final argument arguably raised by the appellant. Much of the appellant's brief is devoted to a scathing critique of Ohio's domestic violence laws and their perceived abuse. Indeed, the first two paragraphs of the appellant's brief read:
 This appeal is necessitated because of the flaws contained in * * * Domestic Violence Law, Ohio Revised Code Section 3113.31, enacted by the Ohio State Legislature.
 As in most instances, when great pressure is put on our legislators, they pass laws that appear on their face to be something that is really needed. In reality, what has happened with Domestic Violence in Gallia County, Ohio, is something else entirely.
The appellant proceeds to argue (without supporting authority) that instances of domestic violence have "increased ten fold" in Gallia County since the enactment of Ohio's domestic violence laws. The appellant apparently wishes this court to infer that such a dramatic increase in reported cases of domestic violence is conclusive proof that the law is being abused. Although the appellant's brief purports to agree that some method of protection for domestic violence victims should be in place, it apparently urges this court to judicially repeal the domestic violence statutes enacted by the General Assembly. According to the appellant, "[t]he domestic violence law, as currently interpreted and enforced, clearly deprives 90% of the males, both due process and equal protection under the law, even though the law reads as gender neutral." We decline the appellant's apparent invitation to strike down R.C. 3113.31.
The record contains no indication that the appellant raised any argument in the trial court concerning R.C. 3113.31's constitutionality. A party's failure to raise the issue of the constitutionality of a statute, which issue is apparent at the time of trial, constitutes a waiver of the issue. State v. Awan
(1986), 22 Ohio St.3d 120, syllabus. Thus, we need not address the appellant's one-sentence constitutional challenge. Id.; see, also, Conkle v. Wolfe, supra; Snyder v. Snyder, supra. To the extent the appellant asks us to strike R.C. 3113.31 on the basis that it is bad public policy, his plea is directed at the wrong branch of government. Questions regarding the wisdom of legislation are left to the General Assembly; if the General Assembly has the constitutional power to enact a law, its wisdom is of no concern to the court. Ohio Public Interest Action Groupv. Pub. Util. Comm. (1975), 43 Ohio St.2d 175, 183, quotingState Board of Health v. Greenville (1912), 86 Ohio St. 1, 20;Brinkman v. Drolesbaugh (1918), 97 Ohio St. 171, 183. The appellant makes no argument that the General Assembly is powerless to combat domestic violence through legislation; indeed, quite the opposite is true. See Felton, supra, 79 Ohio St.3d at 45 (observing that General "Assembly has made "`a laudatory beginning in responding to the problems of domestic violence'" through enactment of GPO legislation), quoting Voris, The Domestic Violence Civil Protection Order and the Role of the Court (1990), 24 Akron L.Rev. 423, 432. Accordingly, neither the appellant's constitutional argument nor his public policy plea is properly before us on this appeal.
We overrule the appellant's assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
(Gooderman v. Patterson)
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Gallia County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J. Abele, J.: Concur in Judgment and Opinion.
For the Court
 BY: _______________________________ William H. Harsha, Judge
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes afinal judgment entry and the time period for further appealcommences from the date of filing with the clerk.
[2] The CPO entered against the appellant reads: "The court finds that defendant [Mr. Patterson) did commit domestic violence by committing stalking or menacing of the petitioner Debra Gooderham." We note that the "Exhibit A" attached to the appellant's brief is actually a copy of a CPO issued against Ms. Gooderham for the protection of Mr. Patterson. That case is also on appeal to this court. Patterson v. Gooderham, Gallia App. No. 99CA02. Because this court found the entry in that case illegible, we remanded the matter to the trial court, which entered a typewritten nunc pro tunc entry clarifying its previous handwritten entry. However, we find no such legibility problem with the entry that is the subject of this appeal.
[3] Prior to Felton, Ohio appellate courts were split on the issue of what standard of proof existed for a CPO petitioner. Some courts analogized R.C. 3113.31 to an injunction proceeding, thereby requiring a petitioner to meet a clear-and-convincing standard of proof. See, e.g., O'Hara v. Dials (Feb. 2, 1996), Erie App. No. E-95-044, unreported. Others applied the preponderance of evidence standard adopted in Felton. SeeSnyder, supra. Decisions were also split on the appellate standard of review. Some applied the civil manifest weight of the evidence standard, see id. andEichenberger v. Eichenberger (1992), 82 Ohio App.3d 809,815; others applied the more deferential abuse of discretion standard, see Deacon, supra, and Thomas v. Thomas
(1988), 44 Ohio App.3d 6, 8; still others applied a hybrid standard combining the two, see Stanzak v. Stanzak (Sept. 10, 1990), Butler App. No. CA89-09-124 (finding abuse of discretion when record lacked competent, credible evidence to support court's finding).