This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Scott Saari appeals from the decision of the Lorain County Domestic Relations Court issuing a civil protection order against Saari.
 I.
Scott and Laurie Saari were divorced on December 31, 1998, by order of the Cuyahoga County Domestic Relations Court. On June 4, 1999, Laurie Saari petitioned the Lorain County Domestic Relations Court to issue a civil protection order ("CPO") against Scott. The court issued an exparte CPO order on June 4, 1999. After a hearing before a magistrate on July 23, the magistrate issued a decision on August 2, co-signed by the judge, ordering Scott to stay away from Laurie, except in certain circumstances, for two years from the date of the order. Scott filed an appeal with this court, which was dismissed on the basis that the trial court's order was not final and appealable.
On October 20, 1999, the trial court issued another civil protection order, to run for two years following the date of this order. The trial court had not heard any additional evidence between August 2 and October 20. Again, Scott's appeal was dismissed because the trial court order was not final and appealable. On March 23, 2000, the trial court entered yet another civil protection order, to run for two years from the date of the instant order. It is from this last order that Scott has filed an appeal. He assigns four errors.[1]
 II.
Assignment of Error I:
 The Trial Court's Conclusion that Appellant Committed Acts of Domestic Violence was Against the Manifest Weight of the Evidence Because there was no Evidence of a Pattern of Conduct Which Could Reasonably Cause Appellee to Conclude That Appellant Would Cause Physical Harm.
Assignment of Error II:
 The Trial Court Erred as a Matter of Law by Relying on Still v. Still To Support Its Finding That Appellant Committed Domestic Violence.
Assignment of Error III:
 The Trial Court Erred and Abused Its Discretion When It Found that Appellant Engaged in Domestic Violence.
In his first three assignments of error, Scott alleges that the finding of domestic violence was against the manifest weight of the evidence. "When evaluating whether a judgment is against the manifest weight of the evidence in a civil context, the standard of review is the same as that in the criminal context." Frederick v. Born (Aug. 21, 1996), Lorain App. No. 95CA006286, unreported, at 14. In determining whether a criminal conviction is against the manifest weight of the evidence:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the [judgment.]
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175. Accordingly, this court will not reverse the judgment unless the trial court, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice.
The issuance of a CPO is governed by R.C. 3113.31. In order for a CPO to be issued, "the trial court must find that petitioner has shown by a preponderance of the evidence that petitioner * * * [is] in danger of domestic violence." Felton v. Felton (1997), 79 Ohio St.3d 34, paragraph two of the syllabus. As used in R.C. 3113.31:
 "Domestic violence" means the occurrence of one or more of the following acts against a family or household member:
* * *
 * * * [C]ommitting a violation of section 2903.211 * * * of the Revised Code[.]"
R.C. 3113.31(A)(1)(b). R.C. 2903.211 states:
 (A) No person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person.
* * *
(C) As used in this section:
 (1) "Pattern of conduct" means two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents. * * *
Laurie appeared at the magistrate's hearing pro se. The following facts from the magistrate's hearing are relevant. Laurie and Scott had two children, who were sixteen and twelve years old at the time of the hearing. Laurie testified that she had a prior CPO issued by the Avon Lake Municipal Court on August 11, 1998, and that Scott violated that order on three occasions. Laurie testified that she allowed that CPO to lapse. Laurie testified that prior to the incidents in question here, Scott had physically abused her, and was charged with domestic violence, which Scott pled down to disorderly conduct. Laurie stated that since the divorce, Scott approached her and verbally harassed her twice at the children's athletics events. On one occasion in March 1999, Scott approached within inches of Laurie, became verbally abusive and followed her as she walked away, continuing to verbally harass her. In May 1999, at a baseball game Scott again became very aggressive and verbally abusive toward Laurie over a property matter related to the divorce. Despite Laurie's instructions to Scott to discuss the matter with her attorney and that she did not want to discuss the matter, Scott continued to harass her verbally. On another occasion, in January or February 1999, Laurie picked up the children at Scott's house. Scott verbally harassed her and told her "he was going to see to it that [she] paid." On cross-examination Laurie admitted that Scott did not physically threaten her on these occasions, but that he had injured her three times in the past, and she was afraid he would hurt her again. She stated, "I am scared to death * * * [b]ecause he hurt me before."
Scott testified that he had never struck Laurie. He testified that he approached Laurie at one game to discuss the property issue and he discussed it quietly with her. Scott stated that he had the conversation with Laurie, who was standing four feet from him. However, Scott also testified that bystanders who were approximately five to ten feet from Scott, could not hear the conversation. Scott admitted that he pursued these conversations with Laurie despite her insistence that she did not want to talk, and that he pursued her after she walked away from him. Scott testified that he simply wanted to discuss property issues related to the divorce. However, Scott admitted that he had an attorney to handle these divorce matters.
To prevail on her request for a CPO, Laurie had to show by a preponderance of the evidence that she was in danger of domestic violence. See Felton, 79 Ohio St.3d paragraph two of syllabus; R.C.3113.31. To demonstrate a danger of domestic violence Laurie needed to show that Scott violated R.C. 2903.211 by knowingly causing Laurie to believe that Scott would physically harm her, on two or more occasions close in time. See R.C. 3113.21 and R.C. 2903.211(A) and (C). Laurie testified that after Scott had physically abused her in the past, Scott continued very aggressively to verbally harass her in public, despite the fact that Laurie walked away from him. These incidents happened three times within a period of four months, and on one occasion Scott threatened to make Laurie pay. Laurie testified that due to Scott's previous physical attacks, she feared that his verbal harassment would escalate into a physical attack.
Although Scott denied ever striking Laurie in the past and although Scott claimed that he behaved appropriately during the incidents in question, issues of credibility are primarily for the trier of fact.State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Thus, the trial court could reasonably find that Scott knowingly caused Laurie to fear that he would physically harm her, based on prior physical attacks. This court cannot conclude that the trial court's determination is so clearly against the manifest weight of the evidence as to require a new trial. Scott's first and third assignments of error are overruled.
Scott also assigns as error the trial court's reliance on Still v.Still (Apr. 23, 1999), Montgomery App. No. 17416, unreported. Although the facts in Still differ from those in the instant case, we have already determined that the trial court's issuance of the CPO was supported by the evidence. Therefore, Scott's second assignment of error is overruled.
 III.
Assignment of Error IV:
 The Trial Court Erred and Abused Its Discretion When It Effectively Extended the Duration of the Protective Order on Two Separate Occasions.
In the fourth assignment of error, Scott asks us to reform the CPO to end on August 2, 2001 — two years after the original CPO was issued. Upon our several remands, the trial court's successive orders stated that the CPO would expire two years from the date of the new orders.
A CPO may only be renewed in the same manner that the CPO was issued originally, i.e., after a full hearing. See R.C. 3113.31(E)(3)(c). In the case at bar, the trial court's repeated extension of the date on which the CPO would expire was done without a full hearing. While such action was arguably not a renewal of the CPO, there is no provision in R.C.3113.31 that permits the sua sponte extension of a CPO beyond the original date. Scott's fourth assignment of error is well-taken.
Accordingly, pursuant to App.R. 12(B), we hereby modify the CPO to terminate on August 2, 2001, as originally ordered by the trial court.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to both parties equally.
 ___________________________ WILLIAM R. BAIRD
SLABY, J., CARR, J., CONCUR
[1] Laurie did not file an appellate brief. As a result, this court "may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action." App.R. 18(C).