OPINION
Revna Jay Reynolds (hereinafter "Revna") is appealing from the decision of the trial court granting a civil protection order against him to protect his former wife, Tracie R. Reynolds (hereinafter "Tracie").
The facts in this case and the rationale of the trial court are fully set forth in its decision and judgment entry, as follows:
 This matter comes before the court upon the Petition for Domestic Violence Civil Protection Order filed on October 8, 1999. An Ex Parte Civil Protection Order was filed on October 8, 1999. Hearings were had on November 2, 1999, November 22, 1999, and on December 30, 1999. A Domestic Violence Full Hearing Civil Protection Order (With Support Orders) was filed herein on February 7, 2000. Respondent, Revna Jay Reynolds, filed his objections on February 18, 2000. A transcript was filed on May 9, 2000. This matter is now ready for Decision and Judgment pursuant to Mont. D.R. Rule 4.54 and Civ.R. 53.
 Respondent objects to the magistrate's finding that Petitioner carried her burden of proof. For some reason, there is no statement of facts in support of the decision attached to the Civil Protection Order. The definition of domestic violence includes "[p]lacing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 or 2911.211 of the Revised Code." R.C. § 3113.31(A)(1)(b). The standard of proof required is proof by a preponderance of the evidence. Felton v. Felton, 79 Ohio St.3d 34, 42 (1997).
 In particular, Respondent states that Petitioner's testimony involves one telephone call in which he threatened to kill her if she filed sexual harassment charges against him. He states that since he lives more than three hours away from Petitioner, even if he did make the phone call the threat would not meet the "imminent" requirement of R.C. § 3113.31.
 On the first day of hearing, Petitioner testified that she is the former spouse of Respondent, and that there was one child born of the marriage, Jordan McKinsey Reynolds (DOB: 1-12-1996). The parties were divorced in Clark County. Petitioner stated that Jordan reported abuse by Respondent, and Petitioner took her to a pediatrician. She denied Respondent visitation on October 1, 1999.
 Respondent then called her residence on October 6, 1999, to speak to Jordan. He also spoke with Petitioner. He threatened to kill everyone in her residence, including Petitioner's fiancee and his daughter. He stated that he would abduct her daughter from her residence while she was sleeping, or from her school during the day. This conversation lasted approximately five minutes. Petitioner called the police to report this call after she hung up with Respondent. She notified the school to be aware that Respondent might attempt to take Jordan. Respondent did not come to her house and threaten her on that date.
 Petitioner further testified to previous incidents of domestic violence. On January 17, 1997, Respondent came to her parents' house, demanding his "f***ing kid" and threatening to kill her family. This was during the divorce proceedings, and Petitioner obtained a temporary protection order at that time. Also during this time Respondent locked her in their home when she went to get some of her belongings. He closed the door on her. When she was able to leave, he followed her onto the driveway, picked her up, and slammed her against the U-haul trailer.
 Petitioner was aware that Respondent had several guns in his possession. He had threatened her when she was pregnant by placing a gun to her head.
 Petitioner agreed that Respondent should have liberal visitation pursuant to the divorce decree. She stated that she had not denied him visitation. She stated that she had to drop the temporary protection order in order to obtain Respondent's signature on the divorce papers. She did in fact allow Jordan to visit with Respondent in his home which was more than three hours away.
 Petitioner did not mention any of the history of domestic violence in her petition. She did not feel that it was appropriate at the time. Petitioner testified that she lives approximately 150 miles away from Respondent. She did not know where Respondent was when he called her. Petitioner talked to Respondent's girlfriend in Akron for almost three hours on October 2, 1999, to convince her that she was not putting ideas in Jordan's head. She did not receive any threats at that time. Petitioner had previously suspected Respondent of sexual abuse in 1997. However, no charges were filed.
 Generally, Respondent has visitation for one week every month. Petitioner testified that he had chosen not to come and get her for visitation for several months. Respondent had had visitation the first week of September prior to the hearing. Petitioner is required to drive Jordan half-way to make the visitation exchange.
 There had been no formal charges of child abuse at the time of the hearing. It had been under investigation for about one and one-half months. Petitioner's conversation with the child were the basis for her belief that child abuse had occurred. They had this conversation when she returned from visitation. There was no physical evidence of abuse at the time of the hearing. Medical records demonstrated that Petitioner took Jordan to Crisis Care and the pediatrician on the 23rd and 30th of September.
 On the second day of hearing, Petitioner additionally testified that when Respondent called her on October 6, 1999, this caused Jordan to become upset, to shake, and to soil herself. Petitioner further stated that this continued for three days following the phone call. She said that she felt this telephone call was a serious threat. Petitioner added that during the incident in January of 1997, Respondent chased her through the house, and hit her several times. She also added that he held a gun to her, and put a gun in his own mouth, and asked her to pull the trigger. In April of 1997 he was arrested for violating the temporary protection order, when he came to see her at 3:00 in the morning at her parents' residence. He refused to leave, and sat outside in his truck. When she went to pick up her belongings after the divorce, he refused to let her in, and told her that he would burn her parents' house down.
 Petitioner's mother, Linda Geiger, testified that she had observed an argument take place between the parties during the summer of 1998 when Respondent came to pick up the child for visitation. She heard him threaten to kill Petitioner. Respondent threatened to kill both of them. He had his fists down to his side. She thought he might hit them, until her husband walked out and told Respondent to leave.
 Ms. Geiger testified that she had overheard Respondent threaten to take Jordan over the phone, and stated that her daughter was shaking when she got off the phone. Ms. Geiger stated that on the day after Petitioner left Respondent Petitioner had bruises and marks on her. She overheard Respondent threaten her soon after that, when he threatened to take Jordan and kill all of them.
 The court finds that sufficient testimony was presented, that if it was believed by the magistrate it would support a finding that Petitioner was placed in imminent fear of harm. The peripheral issues of child abuse accusations, since the parties agree that no abuse was proven, are irrelevant to the case herein. Respondent has engaged in a course of conduct which constitutes stalking under the meaning in R.C. § 2903.211(A), and has caused Petitioner to be afraid for her physical safety and that of the parties' child, since he has threatened to abduct her. See, e.g., Still v. Still (April 23, 1999), Mont. App. No. 17416, unreported. Petitioner's testimony was corroborated. In addition, the court is concerned that Respondent violated the temporary protection order during the recent divorce.
 The threats made against Petitioner were sufficiently "imminent" to be within the meaning of the statute, despite the distance between the parties' residences. The Second Appellate District has interpreted the "imminent" inquiry to mean "whether a reasonable person would be placed in fear of imminent (in the sense of unconditional, non-contingent) serious physical harm." Strong v. Bauman (May 21, 1999), Mont. App. No. 17256 17414, unreported. The Strong court pointed out that it would be irrational to "construe the imminence requirement as requiring that the offender carry out the threat immediately or be in the process of carrying it out." The court went on to explain that if that were the case, a threat would necessarily have to be made within minutes of an opportunity to do so, and such a reading would defeat the purpose of a protection order. The fact that Respondent's telephone threat was tied to the child abuse accusations does not make it too conditional to be imminent, since Petitioner had already made the allegations and pursued the investigation.
 The court finds that Petitioner has met her burden and Respondent's objections to the Civil Protection Order are overruled.
 IT IS THEREFORE ORDERED, that Respondent's objections to the Domestic Violence Civil Protection Order filed on February 7, 2000, are overruled. Any and all stays of the permanent order are vacated.
Revna presents the following sole assignment of error on appeal:
 THE TRIAL COURT ERRED BY GRANTING THE CIVIL PROTECTION ORDER BECAUSE APPELLEE FAILED TO PROVE BY THE PREPONDERANCE OF THE EVIDENCE THAT APPELLANT COMMITTED DOMESTIC VIOLENCE OR STALKING.
The standard of review of a trial court's decision to grant a civil protection order is abuse of discretion. Strong v. Bauman (May 21, 1999), Montgomery App. No. 17256, 17414, unreported. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
The heart of Revna's argument on appeal is that the telephone threat to kill everybody in the house was made at such a long distance from Tracie and her household that she could not have considered it "imminent." However, the standard for reviewing Tracie's fear is subjective, that is, whether her fear was reasonable under the particular circumstances of her particular situation, which must be established by a preponderance of the evidence. Felton v. Felton (1997), 79 Ohio St.3d 34. We have read the transcripts of the three days of hearings on this matter, and we find that the trial court's decision is amply supported by the evidence presented in the hearings. Tracie's fear of violence from Revna is based on a lengthy series of acts of domestic violence by him, including the brandishing of a gun and prior threats to kill and actual acts of physical violence against Tracie by Revna. Tr. Vol. 1, 11; Tr. Vol. 2, 13-14; Tr. Vol. 3, 11.
Among the definitions of "imminent" as this court itself has pointed out, includes "hanging threateningly over one's head," Strong v. Bauman, Id., 3, citing Webster's Third New International Dictionary 1969, (1130). As we pointed out in Bauman, civil protection orders are intended to prevent domestic violence before it occurs and their purpose would be annulled if they could not be imposed in time to prevent the violence, rather than simply immediately before it occurs.
Revna denied making any threats of violence, even of committing the acts of violence testified to by Tracie and her other witnesses, but of course, credibility is for the trial court as we have also stated and have no need to support with citations.
In view of the history of domestic violence committed by Revna, we cannot find that the trial court's decision that Tracie was in fear of imminent murderous attack by Revna was beyond its discretion.
Revna also complains that the trial court was in error in finding that he was committing a stalking course of conduct. Revna, however, is not charged with stalking under the statute. The trial court merely pointed out that that was one of the bases for issuing a civil protection order.
Revna's sole assignment of error is overruled, and the judgment is affirmed.
WOLFF, P.J. and BROGAN, J., concur.