OPINION
{¶ 1} Appellant Joseph D. Jarrell appeals the decision of the Court of Common Pleas, Ashland County, which issued a domestic violence civil protection order ("DVCPO") pursuant to a petition filed by Appellee Jeanette P. Harbaugh. The relevant facts leading to this appeal are as follows.
 {¶ 2} At the time of the aforesaid petition, appellant and appellee had been living together for approximately two years. They also have a child together, Jenna Jarrell, who was born in 2003.[1] The parties apparently had planned on getting married, but in February 2004 appellee left appellant a note indicating she no longer wished to do so. Thereafter, the parties' relationship generally deteriorated.
 {¶ 3} On August 26, 2004, appellee filed a petition for a DVCPO, alleging, inter alia, that appellant had left her threatening notes and had broken into her residence on two occasions. The matter came on for an evidentiary hearing on September 2, 2004, as further discussed infra. The court issued the DVCPO the next day, including the following exception: "Visitation/Parenting Time to be established through Juvenile Court in connection with paternity proceedings." Protection Order at paragraph 13.
 {¶ 4} On September 10, 2004, appellant filed a notice of appeal, and herein raises the following two Assignments of Error:
 {¶ 5} "I. The trial court abused its discretion in issuing a civil protection order where the petitioner-appellee failed to prove by a preponderance of the evidence that domestic violence occurred.
 {¶ 6} "II. The trial court abused its discretion in issuing a civil protection order including jenna jarrell where the petitioner failed to prove by a preponderance of the evidence that jenna jarrell was in danger of domestic violence."
 I. {¶ 7} In his First Assignment of Error, appellant argues the trial court's grant of a civil protection order against him was an abuse of discretion. In his Second Assignment of Error, appellant contends the trial court's grant of a civil protection order in regard to Jenna was an abuse of discretion. We disagree on both counts.
 {¶ 8} A person seeking a civil protection order must prove domestic violence or threat of domestic violence by a preponderance of the evidence. Felton v. Felton (1997), 79 Ohio St.3d 34. Domestic violence is defined by R.C. 3113.31, and includes attempting to cause or recklessly causing a family or household member bodily injury, or placing that person by threat of force in fear of imminent serious physical harm. R.C.3113.31 provides no specific time restrictions for bringing allegations to the court in petitioning for a protective order. Hoff v. Brown (July 30, 2001), Stark App. No. 2000CA00315. Also, relief may be granted under the statute if the victim has cohabited with the perpetrator within five years prior to the date of the alleged acts. R.C. 3113.31(A)(4). InFelton, supra, the Ohio Supreme Court noted that "[t]he General Assembly enacted the domestic violence statutes specifically to criminalize those activities commonly known as domestic violence and to authorize a court to issue protection orders designed to ensure the safety and protection of a complainant in a domestic violence case." Id. at 37, citing Ohio Legislative Service Commission, Summary of 1978 Enactments, June December (1979), at 9-14; Legislative Service Commission Analysis of Sub. H.B. No. 835 as reported by Senate Judiciary Committee (1978), at 2 and 7 (Comment A); Legislative Service Commission Analysis of Am. Sub. H.B. No. 835 as enacted (1978), at 1 and 2.
 {¶ 9} During the evidentiary hearing, appellee testified that appellant would sometimes place himself between appellee and the door and forbid her to leave her residence, although these confrontations did not become physical. Tr. at 7. Appellee described appellant as a person who has served time in prison, has used drugs, and "drinks a lot." Tr. at 15, 27. This caused her concern for Jenna's safety, as he had sometimes returned home drunk, late at night. Tr. at 15. However, she conceded that appellant had never physically struck her or the child. Tr. at 23, 25. Appellee also allowed appellant unsupervised visitation with Jenna in mid-August 2004, shortly before the filing of the CPO petition. Tr. at 30.
 {¶ 10} Nonetheless, appellee testified to and provided exhibits of "notes" that appellant had written which caused her fear and concern for herself and Jenna. The first note included the following: "Now I feel real good things race through my mind Pain Murder Death Bad things I have not felt like that in so long * * *." Petitioner's Exhibit 1. Appellant also wrote: "I feel like a piece of trash I'm not good enough for anyone so maybe I should just disappear altogether nobody would miss me anyways * * * everything I do or say turns into shit so maybe I should just go fall off the end of the earth * * * I don't need nothing so if I disappear don't ask or wonder if I fell into the end of time * * *." Petitioner's Exhibit 2. Appellant added: "You should have known the damage you caused me for being in some fucked up dream of being a family[.] Why not be mad[?]" Id.
 {¶ 11} Appellee also recalled appellant threatening suicide over the telephone. Tr. at 18. Appellee maintained that appellant had twice forcibly broken into her residence in August 2004, when she was not present. Tr. at 36. Appellant denied this allegation. Tr. at 73. During his cross-examination, however, appellant revealed the following:
 {¶ 12} "Q. Mr. Jarrell, you indicated that these letters — or at least the one letter that you wrote was in response to a letter that you received from Ms. Harbaugh, correct?
 {¶ 13} "A. Yes.
 {¶ 14} "Q. You were upset and mad, correct?
 {¶ 15} "A. Yeah, (inaudible).
 {¶ 16} "Q. And you wrote your feelings down, correct?
 {¶ 17} "A. Yes.
 {¶ 18} "Q. Those feelings included pain, murder, death, correct?
 {¶ 19} "A. There was so many things running through my mind, I couldn't straighten one out from the other.
 {¶ 20} "Q. So you did think these things, correct?
 {¶ 21} "A. (Inaudible.)
 {¶ 22} "Q. But you say you just thought about it?
 {¶ 23} "A. Visions in my head.
 {¶ 24} "Q. Visions of who, though? I mean murder requires someone killing another, correct?
 {¶ 25} "A. I don't know who they are. There's people in my head.
 {¶ 26} "Q. People in your head, okay. How about the death? Whose death?
 {¶ 27} "A. Someone's. Not mine. Not the person that I'm in partnership with. Not my own child. It's like watching a TV program in my head.
 {¶ 28} "Q. But you were angry at her at the time when you wrote this, correct?
 {¶ 29} "A. Yes.
 {¶ 30} "Q. So these were an outpouring of your feelings and feelings towards her, correct?
 {¶ 31} "A. I don't get what you're —
 {¶ 32} "Q. I mean these feelings you had were directed towards her, correct? I mean that's why you were writing this letter; was it not?
 {¶ 33} "A. Yeah." Tr. at 78-80.
 {¶ 34} In State v. Awan (1986), 22 Ohio St.3d 120, 123, the Ohio Supreme Court noted the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact, and an appellate court may not substitute its judgment for that of the fact finder. A trial court is in a much better position than an appellate court to weigh the evidence, because it views the witnesses, and observes their demeanor, gestures, and inflections. See Seasons Coal Company v.Cleveland (1984), 10 Ohio St.3d 77. The fact finder is free to believe all, part, or some of the testimony of each witness. State v. Caldwell
(1992), 79 Ohio App.3d 667, 679. Therefore, a judgment supported by competent and credible evidence going to all the elements of the case must not be reversed by a reviewing court as being against the manifest weight of the evidence. Masitto v. Masitto (1986), 22 Ohio St.3d 63.
 {¶ 35} Upon review of the record and exhibits in the case sub judice, we find sufficient competent, credible evidence to support a finding by the trier of fact that the DVCPO was warranted based on the threat of domestic violence and potential danger to appellee and the child, particularly in light of the ominous nature of appellee's notes when read in their entirety.
 {¶ 36} Accordingly, appellant's First and Second Assignments of Error are overruled.
 {¶ 37} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Ashland County, Ohio, is hereby affirmed.
Wise, J., Gwin, P.J., and Farmer, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Ashland County, Ohio, is affirmed.
Costs to appellant.
[1] The record is murky as to whether legal paternity of Jenna has been fully established. See Tr. at 14. But appellee testified that appellant signed a paternity acknowledgement form for Jenna at the hospital. Tr. at 21.