[Cite as *Lowman v. Lowman*, 2021-Ohio-2395.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| JACLYN LOWMAN, | : | JUDGES: |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff - Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. John W. Wise, J. |
| -vs- | : | |
| | : | |
| JEFFREY LOWMAN II., | : | Case No. 2021 CA 00001 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:          Appeal from the Fairfield County
                                                            Court of Common Pleas, Case No.
                                                            20-DV-12


JUDGMENT:                                      Affirmed


DATE OF JUDGMENT:                        July 13, 2021


APPEARANCES:

For Plaintiff-Appellee                        For Defendant-Appellant

HOLLY R. REGOLI                            SCOTT P. WOOD
Law Office of Holly P. Regoli              Conrad/Wood
124 W. Main Street, Suite 203            120 E. Main Street, Suite 200
Lancaster, Ohio 43130                       Lancaster, Ohio 43130

*Baldwin, J.*

{¶1} Appellant Jeffrey Lowman II appeals from the December 10, 2020 Judgment Entry of the Fairfield County Court of Common Pleas, Domestic Relations Division.

### STATEMENT OF THE FACTS AND CASE

{¶2} On February 11, 2020, appellee Jaclyn Lowman filed a Petition for a Domestic Violence Civil Protection Order pursuant to R.C. 3113.31 against her husband, appellant Jeffrey Lowman II. On the same date, appellee was granted an ex parte Domestic Violence Civil Protection Order.

{¶3} On March 13, 2020, a full hearing on the petition was held before a Magistrate. At the hearing, appellee called four witnesses to testify and appellant called three witnesses. At the start of the hearing, the Magistrate advised the parties that since the parties did not wish to reset the matter and wanted to address it that day, she would have to limit each party to a total of forty (40) minutes to argue their case, call witnesses and cross-examine witnesses.  Counsel for appellee then requested a continuance due to the limited amount of time for the hearing, but appellant's counsel objected to the continuance.   The Magistrate denied the request and the hearing went forward. Several times during the hearing, the Magistrate advised the parties on how much time each had left to present their respective case. The time was later expanded to fifty (50) minutes per side.

{¶4} At the hearing, appellee testified that the parties were married on May 30, 2009 and had two minor children. The parties previously lived together in Carroll, Ohio, but they separated and appellee moved out of the marital home on January 18, 2020

because she "didn't feel that I could keep myself and my boys safe." Transcript at 8. She testified this was due to appellant's drinking and his behavior when he drank. According to appellee, appellant had thrown things at them and stumbled when he drank and his behavior was "erratic." Transcript at 9. Appellee testified that she was locking herself and her children downstairs in the basement when appellant would come home on the weekends after drinking and that he was verbally abusive to her and/or her sons when he was under the influence of alcohol.

{¶5}    Appellee testified that on February 9, 2020, she went to the marital home to retrieve some personal property and found marijuana in a cabinet. When she went to take a picture of the marijuana, appellant "got enraged, and he grabbed me and was holding me, trying to get at my phone…at the time, I had the jar of marijuana in my hand and trying to get at it to try to get it away from me and my phone and he was (indiscernible) like pulling me from behind." Transcript at 10. Appellant, she testified, grabbed her arms and held her head. The parties' sons were yelling at appellant to let appellee go and to not hurt her. Appellee testified that she had bruises as a result of the altercation and that her sister took pictures of them.

{¶6}    Appellee also testified as to a prior incident in 2010 when the parties were residing together in Virginia. She testified that appellant was intoxicated and holding their son and when she went to get their son, appellant hit her in the face and broke her glasses.  When asked if appellant committed any other acts of domestic violence against her when she lived in Virginia, appellee testified, in relevant part, as follows:

{¶7}    A.  He continually threw things at me, stopped me from leaving a few times, flipped tables.  He's defecated on the couch, urinated on the couch.  He threw bottles - -

beer bottles and a wine glass holding Zachary and near miss, it hit the wall, but it was right towards us.

{¶8} Q.  Okay.  Was he angry at the time?

{¶9} A. Yes.

{¶10} Q. Do you know if he was under the influence of alcohol at that time?

{¶11} A.  Absolutely.

{¶12} Transcript at 16.

{¶13} Appellee testified that after Virginia, they moved to Michigan in 2013. While they were in Michigan, appellant was verbally abusive toward her and flipped furniture and threw things when he was angry. The parties then moved to Ohio for appellant's job. Before moving to the house in Carroll, the parties lived in a house in Lithopolis. While in Lithopolis, appellant threw things, flipped furniture and was aggressive towards the children.

{¶14} At the hearing, Stephanie Folt, appellee's sister, testified that she had witnessed appellant being very aggressive towards appellee and testified as follows when asked to describe what incidents she had witnessed:

{¶15} A.  So the most recent was when we were getting things out of Jaclyn's [appellee's] home.

{¶16} Q.  Was that around February 6th of 2020?

{¶17} A.  That was around February 6th of 2018 - - or 2020.  Sorry.

{¶18} Q.  This year?

{¶19} A.  Yes, this year.

{¶20} Q.  Okay. What happened?

**{¶21}** A.  So we were out at the house to get items out of the home.  And he was at the house at the time and became very angry that we were there and was screaming, yelling, slamming doors, blocking entry into certain rooms so much so that we exited to the garage, stayed in the garage.  I was fearful for myself and for my sister at the time until the police were called, and they showed up and told everyone that she has every right to be there and to get her items out of the house.

**{¶22}** Q.  Okay, were there any - - did Mr. Lowman [appellant] make any threatening statements to either yourself or to Jackie [appellee], that you recall?

**{¶23}** A.  I mean, by calling names and saying that she wasn't allowed to be there and that kind of stuff.

**{¶24}** Transcript at 68-69.

**{¶25}** Folt testified that, on February 15, 2020, she took pictures of appellee's bruises and marks from the incident on February 9, 2020. The bruises were on appellee's arms. She further testified that while the parties were residing in Virginia, appellee called her in the middle of the night and told her that appellant had hit her in the face and broken her glasses while she was holding their baby son. She testified that after drinking, appellant became "very, very aggressive, mean, loud, calling names at both my sister and his boys." Transcript at 74.

**{¶26}** At the conclusion of the hearing, the Magistrate took the matter under advisement.  On March 17, 2020, the Magistrate ordered a five-year Domestic Violence Civil Protection Order against appellant in favor of appellee. It did not cover the parties' minor children. Appellant filed objections to the Magistrate's Decision.

{¶27} As memorialized in a Judgment Entry filed on December 10, 2020, the trial court upheld the Magistrate's Decision, but found that there was no basis to order a firearms restriction. The trial court issued a modified Domestic Violence Civil Protection Order against appellant for a period of five years.

{¶28} Appellant now appeals, raising the following assignment of error on appeal:

{¶29} "I. APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW WHEN THE TRIAL COURT UNREASONABLY LIMITED THE AMOUNT OF TIME FOR APPELLANT'S CASE."

{¶30} II. THE TRIAL COURT ERRED IN GRANTING THE CIVIL PROTECTION ORDER AGAINST APPELLANT."

I

{¶31} Appellant, in his first assignment of error, argues that he was denied his constitutional right to due process of law when the trial court limited the amount of time for each party's' case.  We disagree.

{¶32} With respect to due process, we note that, in civil proceedings, due process requires notice and a meaningful opportunity to be heard.  *State v. Hayden,* 96 Ohio St.3d 211, 2002–Ohio–4169, 773 N.E.2d 502.

{¶33} The full hearing in this matter was originally scheduled for 1:00 p.m., but was delayed to 2:32 p.m. After the Magistrate stated that it was his understanding that the parties did not wish to reset the matter and wanted to address it that day, appellant's counsel stated "[t]hat's correct." Transcript at 4. The following discussion then took place on the record:

{¶34} THE COURT. Okay. And so with regard to that, I'm happy to do that. We're just going to have to limit everyone's time. I originally told you you get an hour each, and that's now down to about 40 – probably 40 - - 40 minutes each, giving a few minutes for me to keep time. So I'll give you 40 minutes each.

And at this point in time, then, Attorney Regoli [appellee's counsel], would you like to make any opening statement?

{¶35} MS. REGOLI: Your Honor, before I do, I would like to say that I - - I don't necessarily agree to - - to not continue this. I mean, if I have a choice in the matter, you know, now we're down to 40 minutes each. Each side has four or five witnesses, and they have important things to say. So I'm very concerned about being able to adequately put forth my case in 40 minutes. So I will ask for a continuance.

{¶36} THE COURT: Okay. And Attorney Trolinger?

{¶37} MR. TROLINGER: Yes. My client, obviously, is impacted by the CPO greatly. And there are witnesses out in the hallway that have traveled from all over the country, some traveled by car eight hours to be here, others by plane from Florida and otherwise.

{¶38} THE COURT: Okay.

{¶39} MR. TROLINGER: So we would obviously object to a continuance.

{¶40} THE COURT: Okay. I'm inclined to - - I'm inclined to deny the continuance and continue on with the hearing today. We all know that CPOs are very relevant, and it is important that we get through this today. So we are going to proceed, and I'll just kind of keep time. Obviously, the issues should be very constricted to whether or not there's

a domestic violence civil protection order necessary.  So I would just remind you not to get too far into other issues at this point in time.

**{¶41}** Transcript at 4-6.

**{¶42}** We concur with appellee that, if appellant did not wish to be limited on time, he could have agreed to the continuance requested by appellee. Appellant, however, did not do so and thus agreed to be bound by the time limitation. We find that there was no due process violation in this case.

**{¶43}** Appellant's first assignment of error is, therefore, overruled.

II

**{¶44}** Appellant, in his second assignment of error, contends that the trial court erred in granting the civil protection order against appellant. We disagree.

**{¶45}** A petition for a domestic violence civil protection order is governed by R.C. 3113.31. Subsection (A) states the following in relevant part:

**{¶46}** (A) As used in this section:

**{¶47}** (1) "Domestic violence" means the occurrence of one or more of the following acts against a family or household member:

**{¶48}** (a) Attempting to cause or recklessly causing bodily injury;

**{¶49}** (b) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 [menacing by stalking] or 2911.211 [aggravated trespass] of the Revised Code[.]

**{¶50}** "When granting a protection order, the trial court must find that petitioner has shown by a preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence. R.C. 3113.31(D)." *Felton v.*

*Felton,* 79 Ohio St.3d 34, 1997-Ohio-302, paragraph two of the syllabus. "Preponderance of the evidence" is "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole show that the fact sought to be proved is more probable than not." *Black's Law Dictionary* 1182 (6th Ed.1990).

**{¶51}** A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517. The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison,* 49 Ohio St.3d 182, 552 N.E.2d 180 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 1997-Ohio-260, 674 N.E.2d 1159.

**{¶52}** The decision whether to grant a civil protection order lies within the sound discretion of the trial court. *L.L. v. R.B.,* 5th Dist. Guernsey No. 17 CA 02, 2017-Ohio-7553; *Singhaus v. Zumbar*, 5th Dist. Tuscarawas No. 2015AP020007, 2015-Ohio-4755. In order to find an abuse of discretion, this court must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**{¶53}** On March 13, 2020, the Magistrate conducted a full hearing. In granting the five-year civil protection order, the Magistrate, who was the trier of fact, made the following relevant findings of fact:

The Petitioner has proven by a preponderance of the evidence that she has been the victim of domestic violence at the hands of the Respondent. Petitioner testified that she has been punched in the face and that Respondent broke her glasses in 2010. Petitioner testified that on February 9, 2020, Respondent grabbed her arms so violently that he left significant bruising. Petitioner further testified of Respondent's behaviors for almost their entire marriage of habitual drunkenness which would include verbal abuse to herself, as well as Respondent throwing things at her and flipping furniture.

{¶54} In addition, photos of appellee's injuries from the February 9, 2020 incident were submitted to the trial court.

{¶55} In its Judgment Entry filed on December 10, 2020, the trial court determined that the Magistrate's findings were supported by competent and credible evidence and that Petitioner met her burden of preponderance of the evidence establishing that she was in danger of domestic violence. We agree. As is stated above, appellee testified as to events in 2010 and February 9, 2020. The Magistrate, as trier of fact, was in the best position to assess her credibility.

{¶56} Appellant's second assignment of error is, therefore, overruled.

**{¶57}**  Accordingly, the judgment of the Fairfield County Court of Common Pleas,

Domestic Relations Division is affirmed.

By: Baldwin, P.J.

Hoffman, J. and

Wise, John, J. concur.