[Cite as *A.M. v. M.J.M.*, 2022-Ohio-2945.]

COURT OF APPEALS
MORGAN COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| A.M. | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Petitioner-Appellant | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 21AP0004 |
| | : | |
| M.J.M. | : | |
| | : | |
| | : | |
| | : | |
| Respondent-Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Morgan County Court
                             of Common Pleas, Case No. 21DV0091

JUDGMENT:                    AFFIRMED

DATE OF JUDGMENT ENTRY:      August 23, 2022

APPEARANCES:

For Petitioner-Appellant:              For Respondent-Appellee:

CHARLES A. COHARA                      NO APPEARANCE
MIRANDA ANANDAPPA
954 E. State St.
Athens, OH 45701

*Delaney, J.*

{¶1} Petitioner-Appellant A.M. appeals the August 31, 2021 judgment entry of the Morgan County Court of Common Pleas.

**FACTS AND PROCEDURAL HISTORY**

{¶2} On May 24, 2021, Petitioner-Appellant A.M. filed a Petition for Domestic Violence Civil Protection Order ("DVCPO") against Respondent-Appellee M.J.M. in the Morgan County Court of Common Pleas. Petitioner sought a protection order against Respondent to protect her, their minor son, and Petitioner's two minor daughters. Attached to the petition was a complaint and summons from the Morgan County Sheriff's Office and a sheriff's report detailing that Respondent had been arrested on May 12, 2021 for domestic violence and child endangering.

{¶3} The trial court granted an ex parte DVCPO and set the matter for full hearing on June 2, 2021. Respondent requested a continuance of the full hearing because the domestic violence charge was pending in the Morgan County Court. The full hearing was continued to August 24, 2021.

{¶4} The following evidence was adduced at the August 24, 2021 full hearing. Petitioner was represented by counsel and Respondent proceeded pro se.

{¶5} Petitioner and Respondent are the biological parents of an infant son. Petitioner and Respondent are not married but on May 12, 2021, they lived together in a home located in Morgan County, Ohio. Respondent's parents owned the home, and they lived next door.

{¶6} On or about May 12, 2021, Petitioner was at the home with the baby and her younger sister. Petitioner was planning on taking their two-month-old son to have

dinner with her family. She placed the baby in the car seat while she waited for her two daughters to get off the school bus. When Respondent returned home, he told Petitioner that she was not leaving or taking his son away from him. Petitioner said Respondent started screaming at her, which caused the baby to cry. Petitioner's sister picked up the baby. Respondent went to the sister and took the baby from her. Respondent went into the living room and put the baby in the car seat, but did not strap him in.

{¶7} Petitioner and Respondent continued to argue that she was going to dinner and not taking the baby away from him. Petitioner testified that Respondent went to pick up the car seat to make a turn and run. Petitioner saw her sister move to push the car seat down because the baby was not strapped in. As the sister came towards Respondent, he elbowed the sister and she fell to the ground. Petitioner heard her sister gasp for breath.

{¶8} When Respondent elbowed the sister, Petitioner saw the baby flip out of the car seat onto the couch and almost hit the floor. Respondent caught the baby before he hit the floor.

{¶9} Petitioner said she got to her knees to try to get to the baby. She told Respondent to put the baby down because he could hurt him. She told her sister to go next door to Respondent's parents' home, so Respondent's father could call the police. Respondent's father arrived shortly thereafter, and he sat with Respondent to calm him down.

{¶10} Petitioner called her father who told her to take the children and leave the house. She went to the Morgan County Sheriff's Office to make a report after she left the home with the children.

{¶11} Petitioner testified the incident with the baby was not the first time Respondent had displayed that type of behavior. While she was pregnant with their child, Petitioner reprimanded Respondent for punishing her daughter by hitting her on the back of the head. He asked Petitioner if she wanted him to parent or not parent. She told him that if he was going to take parenting too far, she would let him know. Petitioner stated that Respondent backed her up against the stairs, got in her face, and told her, "his parents had enough money to bury me under the courthouse and he'd make sure that happened before I took his son from him." (T. 19).

{¶12} Petitioner requested the trial court grant her a DVCPO against Respondent for five years. She wanted Respondent to do anger management or have a mental health evaluation. She felt an order was necessary because she was scared for her and her son's life. She stated, "If he takes a spell like that where he's acting crazy like that, shows up at my house, anything, there's nothing I can do. Just like last time, I was powerless with my son." (T. 20-21).

{¶13} Petitioner's sister testified about her experiences on May 12, 2021. She stated that when she went to push the car seat down, Respondent swung the car seat to push her off. When he did that, Respondent's elbow swung into her and hit her in the chest, causing her to fall to the floor and knocking the wind out of her. The baby then flipped out of the car seat and fell. The paramedics examined the sister after the sheriff was called and she said they found bruising and some marks where her necklace was indented into her chest. Petitioner took her sister to the doctor a couple of days after the incident. The doctor's report was admitted as an exhibit.

{¶14} Respondent was cross-examined at the hearing, and he did not present any evidence on direct other than information regarding his conviction in the Morgan County Court. He was originally charged with domestic violence and child endangering in the Morgan County Court, but pursuant to a plea agreement, the State dismissed the child endangering charge, and the domestic violence charge was amended to disorderly conduct. Respondent entered a no contest plea. The Morgan County Court sentenced Respondent to 30 days in jail, 28 days suspended, and 2 days credit for time served. He was placed on probation for one year and had to obtain a mental health evaluation and a drug and alcohol assessment, which he had scheduled for September 8, 2021. Respondent had no prior convictions for domestic violence.

{¶15} At the conclusion of the hearing, the trial court took the matter under advisement. On August 31, 2021, the trial court issued its judgment entry that found in pertinent part:

> The State's reduction of the domestic violence charge is an indication that the State came to believe the Respondent's conduct did not arise to the level of domestic violence or the State did not believe it could prove domestic violence at a trial beyond a reasonable doubt. * * * The Court finds there is no credible evidence that the Petitioner and her household members presently are in danger from the Respondent. The Court further finds that the Respondent's behavior during May 12, 2021 did not constitute domestic violence as defined by R.C. 3113.31(A).

(Judgment Entry, August 31, 2021). The trial court condoned Respondent's behavior and stated it would be relevant in a future custody dispute between the parties, but because

the preponderance of the evidence did not demonstrate domestic violence under R.C. 3113.31(A), the petition for the DVCPO was denied.

{¶16} It is from this judgment entry that Petitioner now appeals.

## ASSIGNMENTS OF ERROR

{¶17} Petitioner raises two Assignments of Error:

{¶18} "I. THE TRIAL COURT IMPROPERLY CONSIDERED THE OUTCOME OF APPELLEE RESPONDENT'S CRIMINAL DOMESTIC VIOLENCE CASE IN DENYING APPELLANT PETITIONER'S REQUEST FOR A CIVIL PROTECTION ORDER UNDER R.C. 3113.31.

{¶19} "II. THE TRIAL COURT ERRED IN FAILING TO FIND THAT THE APPELLANT PETITIONER MET HER BURDEN OF PROOF TO OBTAIN A CIVIL PROTECTION ORDER UNDER R.C. 3113.31."

## ANALYSIS

{¶20} For ease of discussion, we consider Petitioner's first and second Assignments of Error together because they raise similar issues. Petitioner contends in both Assignments that the trial court erred when it denied her petition for a domestic violence civil protection order.

### Standard of Review

{¶21} The decision whether to grant a civil protection order lies within the sound discretion of the trial court. *Singhaus v. Zumbar*, 5th Dist. Tuscarawas No. 2015AP020007, 2015-Ohio-4755. Therefore, an appellate court should not reverse the decision of the trial court absent an abuse of discretion. To find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or

unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶22} A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517. The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180 (1990). "Under this highly deferential standard of review, we do not decide whether we would have come to the same conclusion as the trial court." *Henry v. Henry*, 4th Dist. Ross No. 04CA2781, 2005-Ohio-67, 2005 WL 43888, ¶ 14. Rather, we are required to uphold the judgment so long as the record contains some evidence from which the trier of fact could have reached its ultimate factual conclusions. *Id*. Our deference is because the trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

### Domestic Violence Civil Protection Order

{¶23} Pursuant to R.C. 3113.31, to obtain a domestic violence civil protection order, the petitioner must prove by a preponderance of the evidence that the respondent has engaged in an act of domestic violence against petitioner or petitioner's family or household members. *Felton v. Felton*, 79 Ohio St.3d 34, 679 N.E.2d 672 (1997). "Preponderance of the evidence" is "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not." *Horne v.*

*Stafford*, 5th Dist. Fairfield No. 20-CA-17, 2020-Ohio-5073, 2020 WL 6306049, ¶ 10 citing Black's Law Dictionary 1182 (6th Ed.1990).

{¶24} As defined by R.C. 3113.31(A)(1), the phrase "domestic violence" means the occurrence of one or more of the following acts against a family or household member, in relevant part:

(i) Attempting to cause or recklessly causing bodily injury;

(ii) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 or 2911.211 of the Revised Code;

(iii) Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code;

(iv) Committing a sexually oriented offense. * * *

* * *

{¶25} The "statutory criterion to determine whether or not to grant a civil protection order pursuant to R.C. 3113.31 is the existence or threatened existence of domestic violence." *Henry v. Henry*, 4th Dist. Ross No. 04CA2781, 2005-Ohio-67, 2005 WL 43888, ¶ 16 quoting *Thomas v. Thomas*, 44 Ohio App.3d 6, 8, 540 N.E.2d 745 (1988). In this case, the trial court found the preponderance of the evidence did not show the incident between Petitioner and Respondent was domestic violence, nor was there the threatened existence of domestic violence between the parties. Petitioner argues on appeal that the trial court erred in denying her petition because (1) the trial court impermissibly considered the result of Respondent's concurrent criminal proceedings arising out of the

events on May 12, 2021 and (2) Petitioner presented uncontroverted evidence establishing her burden of proof under R.C. 3113.31.

{¶26} Petitioner first contends the trial court improperly considered Respondent's conviction for disorderly conduct when determining whether Petitioner had established that she was entitled to a DVCPO. Based on the events that occurred on May 12, 2021, Respondent was arrested and charged with child endangering and domestic violence. Pursuant to a plea agreement with the State, the State amended the domestic violence charge to disorderly conduct and dismissed the child endangering charge. Respondent entered a no contest plea and was found guilty of disorderly conduct. In its judgment entry denying the DVCPO, the trial court noted the concurrent criminal proceeding and found, "the State's reduction of the domestic violence charge is an indication that the State came to believe the Respondent's conduct did not arise to the level of domestic violence or the State did not believe it could prove domestic violence at a trial beyond a reasonable doubt." (Judgment Entry, Aug. 31, 2021).

{¶27} Petitioner correctly states that a petition for a domestic violence civil protection order pursuant to R.C. 3113.31 is separate and distinct from a criminal proceeding for domestic violence brought under R.C. 2919.25. While the statutory civil and criminal proceedings may arise from the same set of facts and may be pursued at the same time in the same jurisdiction, the proceedings have different burdens of proof and different penalties. Petitioner contends that because of those differences, it was improper for the trial court to consider that the State amended Respondent's criminal charge from domestic violence to disorderly conduct when determining whether Petitioner met her burden of proof under R.C. 3113.31.

{¶28} To grant or deny a DVCPO, the trial court is tasked to determine whether Respondent engaged in an act of domestic violence against Petitioner and/or Petitioner's family. The weight to be given to a past conviction for domestic violence is a matter within the trial court's discretion. *Henry v. Henry*, 4th Dist. Ross No. 04CA2781, 2005-Ohio-67, 2005 WL 43888, ¶ 5. The trial court as the factfinder is permitted to weigh the evidence of Respondent's past convictions for domestic violence to determine if under R.C. 3113.31, Respondent placed Petitioner "by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 or 2911.211 of the Revised Code." The evidence in this case, raised by Petitioner upon cross-examination of Respondent and corroborated by Respondent's direct examination, showed that based on the events of May 12, 2021, Respondent was charged with domestic violence but convicted of disorderly conduct after the State amended the charge. There was no support in the record, however, for the trial court's speculation in the August 31, 2021 judgment entry as to the basis for the State's amendment of the charge from domestic violence to disorderly conduct. Respondent did not give a reasoning for the amendment of the charge and there was no testimony from the parties involved with the criminal proceedings.

{¶29} We find the trial court's speculation as to why the State amended the charge is not harmful error in this case. In the August 31, 2021 judgment entry, the trial court went on to consider whether Petitioner established by a preponderance of the evidence that she and her household members were in danger and have been a victim of domestic violence as defined by R.C. 3113.31(A). The trial court then independently determined there was no credible evidence that Petitioner and her household were in present danger

from Respondent and that Respondent's behavior on May 21, 2021 did not constitute domestic violence as defined by R.C. 3113.31.

{¶30} Petitioner next argues the trial court abused its discretion when it denied her petition for a domestic violence civil protection order. The trial court found the preponderance of the evidence did not demonstrate domestic violence as defined by R.C. 3113.31(A). Petitioner contends she presented uncontroverted evidence of Respondent's behavior on May 12, 2021 and his previous statement to her that if she tried to take their child, he would "bury her under the courthouse," which demonstrated by a preponderance of the evidence that Respondent placed her by the threat of force in fear of imminent serious physical harm under R.C. 3113.31(A). Based on the uncontroverted evidence, Petitioner argues the trial court should have granted the DVCPO.

{¶31} We examine the evidence to determine if the trial court abused its discretion. In support of her petition, Petitioner testified that Respondent once told her after an argument about parenting, that "his parents had enough money to bury me under the courthouse and he'd make sure that happened before I took his son from him." (T. 19). Was Respondent's statement to Petitioner the threat of serious physical harm or the threat of a costly custody action? As to the events on May 12, 2021, Petitioner testified that Respondent argued with her about taking the baby to dinner. Respondent took the baby from her sister, put the baby in the car seat, and when the sister tried to push down the car seat, Respondent turned the car seat away from the sister. When he turned away, he elbowed the sister, which caused her to fall to the ground. The baby was not strapped into the car seat, so it fell out of the seat when it was abruptly moved.

{¶32} The trial court found that while Respondent's behavior on May 12, 2021 was inappropriate, negligent, and reckless, it was not intentional or purposeful. (Judgment Entry, Aug. 31, 2021). It found there was no evidence that Petitioner and her household were in imminent danger from Respondent. Upon the record before us and within the bounds of our limited standard of review, we find the trial court's determination that Petitioner failed to establish domestic violence pursuant to R.C. 3113.31(A) was supported by competent, credible evidence and the decision to deny the DVCPO was not an abuse of discretion. The trial court as factfinder had the duty to consider the testimony, the parties' credibility, and weigh the evidence to determine if the preponderance of the evidence supported a finding under R.C. 3113.31. We find there was competent, credible evidence in the record to support the trial court's finding that Respondent did not place Petitioner or her household members by the threat of force in fear of imminent serious physical harm.

{¶33} Petitioner's first and second Assignments of Error are overruled.

**CONCLUSION**

{¶34} The judgment of the Morgan County Court of Common Pleas is affirmed.

By: Delaney, J.,

Hoffman, P.J. and

Wise, John, J., concur.